## 52060, 52061. CINCINNATI INSURANCE COMPANY v. GWINNETT FURNITURE MART, INC.; and vice versa.

DEEN, Presiding Judge.

*Statement of Fact.* The appellee furniture store suffered the theft of an air conditioning unit the purpose of which was to cool the interior of its store. The unit sat on concrete slab outside the building and was connected with the interior by an electrical line supplying power to the equipment and a line from the equipment into the building supplying the cooling element, both of which lines were severed at the time the air conditioner was removed. The insurer made a claim, and the adjuster to which appellant turned it over, and who was authorized to act for it "insofar as plaintiff's claim comes within the scope of his insurance policy" issued and delivered a draft covering the agreed value of the loss; however, the insurer refused to honor the draft, contending the loss was not covered by the policy. Both sides moved for summary judgment. The trial court granted summary judgment to

the plaintiff and the insurer appeals. He refused to grant attorney fees and penalty for bad faith, from which the insured cross appeals.

*Policy Provisions.* This is a multicoverage policy containing a number of divisions. The coverages purchased include (1) fire and allied; (2) general liability; (6) plate glass and (7) neon signs. We are interested only in (1) which includes (A) fire and lightning; (B) extended coverage; (C) vandalism and malicious mischief and (D) dealer's comprehensive, and of these subdivisions only (A) and (D) are here involved. Section (1) (fire and allied) is entitled "Physical Damage to Property." "Property damage" is defined as "physical injury to or destruction of tangible property which occurs during the policy period." The stated coverages are "Buildings as described in the declarations, including equipment, yard fixtures and personal property of the insured used in the maintenance of service of the buildings (including the extinguishing apparatus, floor and window coverings, refrigerating, air conditioning and outdoor equipment) while at the location described" and "Contents — Business personal property of the insured used in the conduct of the business." One of the extensions of coverage is for "consequential loss to personal property covered hereunder caused by change of temperature or humidity resulting from damage by the perils insured against to. . . air conditioning. . . (including their connections and supply or transmission lines and pipes) when situated on the described premises."

Only division (D), the dealer's comprehensive endorsement, insures against theft. The property it covers is "personal property usual to the conduct of the insured's business, consisting principally of Furniture Store." This, it is obvious, is the same property as the "Contents — Business and personal property of the insured used in the conduct of the business" coverage. Nowhere is any distinction in meaning between the words "building," "contents," "personal property," "equipment," etc. made as between coverages (A) and (D) so the words must be assumed to mean the same throughout except as modified by stated conclusions. As to the insurance afforded on the property covered by (D) there is a Premises Damage

provision as follows: "The company will also pay for the damage (except by fire) to that part of the building occupied by the insured and to equipment therein directly resulting from theft. . . but in no event shall this section apply to glass (excepting structural glass) or to any lettering or ornamentation thereon."

*Rules of Construction.* It is the function of the court to construe the contract as written and not to make a new contract for the parties. *Pilot Life Ins. Co. v. Morgan,* 94 Ga. App. 394 (94 SE2d 765). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider endorsement." Code § 56-2419. While insurance is a matter of contract, not sympathy (*Duckett v. Piedmont Southern Life Ins. Co.,* 118 Ga. App. 3 (162 SE2d 531)), the policy is to be construed liberally in favor of the object to be accomplished (*Moore v. Allstate Ins. Co.,* 108 Ga. App. 60 (131 SE2d 834); *Raynor v. American Heritage Life Ins. Co.,* 123 Ga. App. 247 (180 SE2d 248); *Sovereign Camp, W.O.W. v. Everett,* 58 Ga. App. 642 (199 SE 660)) both because the subject matter affects the public interest (American Indem. Co. v. Davis, 155 FSupp. 47) and because, if the construction is doubtful, that which goes against the party executing the instrument or undertaking the obligation is to be preferred (Ga. S & F Ry. Co. v. U. S. Cas. Co., 177 FSupp. 751, aff. 272 F2d 712). An unambiguous contract will be construed to carry out the literal intent of the parties. *Genone v. Citizens Ins. Co. of N. J.,* 207 Ga. 83 (60 SE2d 125). The cardinal rule is to ascertain the intention of the parties. Code § 20-702. But the construction is for the court unless the contract is ambiguous in the sense that aliunde evidence must be resorted to, or a question of fact is involved. *Ludden &c. Music House v. Dairy &c. Supply Co.,* 17 Ga. App. 581 (1) (87 SE 823); *Bennett v. Dove,* 93 Ga. App. 57 (90 SE2d 601).

*Conclusions.* (a) Examination of the policy organization in terms of the law set out above makes it obvious that as to the Comprehensive Property and Casualty Policy, Section 1, coverages (A) and (D) must be construed together. Only (D) covers theft. (A) covers buildings *including* air conditioning and outdoor

equipment. (D) covers contents, *including* that part of the building occupied by the insured. This building was occupied by the insured in its entirety, and the air conditioning is by definition included in the word "building." What the appellee completely ignores is that this results in some personal property coverage under "buildings" and some building coverage under "contents." The insurer wrote the contract and it must be construed as a whole. It would have been very simple to eliminate maintenance equipment coverage under (D) in the same way that glass coverage was eliminated under (D) but the insurer did not do so. Where "damage to... the building... directly resulting from theft" is a peril insured against, the words can have no other meaning than that if a part of the building is removed or destroyed by theft, the insurer has undertaken a commitment to reimburse the owner. Where "building" includes "air conditioning equipment," the theft of the air conditioner is damage to the building directly resulting from theft, and is compensable. Therefore, summary judgment in favor of the insured was properly granted.

(b) Whether or not the company, which prepared the contract, was guilty of bad faith in stopping the payment draft issued by its adjuster, is a jury question. "Where there is a complete failure of the insurer to prove any defense to an action on an insurance policy, such is evidence of bad faith as contemplated by Code Ann. § 56-1206, and subjects the insurer to a verdict for the statutory penalty and attorney fees. *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751 [12 SE 18]; *Traders Ins. Co. v. Mann,* 118 Ga. 381 (45 SE 426); *Reserve Life Ins. Co. v. Ayers,* 217 Ga. 206, 213 (121 SE2d 649)." *Key Life Ins. Co. v. Mitchell,* 129 Ga. App. 192, 195 (198 SE2d 919). This issue should have been left for jury determination.

*Judgment affirmed on the main appeal, no. 52060. Judgment reversed on cross appeal, no. 52061. Quillian and Webb, JJ., concur.*

ARGUED APRIL 13, 1976 — DECIDED APRIL 22, 1976.

*Savell, Williams, Cox & Angel, Andrew Robert*

448

*Greene,* for appellant.

*Rubin, Appel & Strickland, Martin H. Rubin,* for appellee.