### 60944. PREMIUM DISTRIBUTING COMPANY, INC. v. NATIONAL DISTRIBUTING COMPANY, INC. et al.
### 60945. STRICKLAND v. NATIONAL DISTRIBUTING COMPANY, INC. et al.

SHULMAN, Presiding Judge.

National Distributing Company, Inc. (hereinafter "National") filed a petition in superior court seeking a declaratory judgment and injunctive relief against Premium Distributing Company, Inc. (hereinafter "Premium") and the Georgia Commissioner of Revenue (hereinafter "Commissioner"). The petition sought to have Premium

barred from pursuing and the Commissioner barred from asserting jurisdiction over an administrative proceeding brought by Premium. The judge to whom the case was assigned denied a motion for summary judgment filed by National. When the case was subsequently assigned to another judge, National renewed its motion. The second judge granted National's motion without additional oral argument. Both appellants then filed separate notices of appeal. Taken together, the appeals present three issues: Was the trial court authorized to consider the renewed motion for summary judgment? Was the trial court required to conduct a hearing before granting the renewed motion for summary judgment? Was National entitled to summary judgment?

1. Citing *Sams v. McDonald,* 119 Ga. App. 547 (2) (167 SE2d 668); *Fierer v. Ashe,* 147 Ga. App. 446 (249 SE2d 270); *Graham Bros. Const. Co. v. Seaboard C. L. R. Co.,* 150 Ga. App. 193 (2) (257 SE2d 321); and *Christian v. Allstate Ins. Co.,* 152 Ga. App. 358 (262 SE2d 621), appellants argue that the trial court had no authority to consider appellee's "Renewed Motion for Summary Judgment," because there had been no expansion of the record since the denial of appellee's first motion for summary judgment. Appellee counters that argument with two points, contending that there is no requirement that the record be expanded before a previously denied motion for summary judgment is reconsidered and that, if such expansion were necessary, three affidavits filed with appellee's second motion met that requirement. After a review of statutory and case authority, we conclude that it is within the discretion of a trial judge to consider a renewed motion for summary judgment even without an expansion of the record.

Appellants have drawn an unwarranted conclusion from the cases cited in support of their argument. While it is true that in those cases additional evidence was submitted after the denial of the first motion for summary judgment and before the grant of the second, that fact was important in only one of the four cases cited. In *Sams,* supra, the fact of additional evidence was mentioned, but not specifically relied upon. In *Fierer,* supra, and *Graham,* supra, the holding was that it was not error to grant a second motion for summary judgment based on an expanded record. Both those cases relied upon *Ellington v. Tolar Const. Co.,* 142 Ga App. 218 (235 SE2d 729), in which case the expansion of the record *was* significant. There, the denial of summary judgment was affirmed on appeal. That affirmance established as the law of the case that the movant was not entitled, on the basis of the record as it then existed, to summary judgment. See Code Ann. § 81A-160 (h). *Christian,* supra, followed the same procedural pattern followed by *Ellington:* an appellate

affirmance of the denial of summary judgment made that denial, on the record as it then stood, the law of the case. In *Fierer* and *Graham,* however, as in the present case, there was no appeal between the denial of summary judgment and the consideration of the renewed motion. Therefore, the denial had not become the law of the case and did not bar a second consideration of the motion for summary judgment.

2. The second procedural issue raised by appellants concerns the requirements for notice and hearing in Code Ann. § 81A-156. Appellants argue that, the procedural context being the same, this case is controlled by the holding in *Smith v. Conley,* 152 Ga. App. 589, 590 (263 SE2d 453): "The court granted appellee['s] motion for summary judgment without holding a hearing or fixing a time for a hearing on the motion and without giving appellants notice of the time when judgment would be rendered. That procedural shortcoming requires reversal. [Cits.]" Appellants insist that both notice and hearing were lacking in this case as well.

We do not find support in our review of the record for appellants' argument concerning notice. Appellee's renewed motion was filed on February 25, 1980. The order granting that motion was filed on April 24, 1980, almost two months later. The service of the motion on appellants was notice that the motion had been renewed. Almost three weeks before the grant of the motion, a notice appeared in the official organ of the court announcing that the motion would be decided without oral argument. While we do not agree with appellee that such a notice suffices as a basis for a finding of waiver of oral argument (see discussion infra), we do find that such a notice put appellants on notice that judgment was imminent. Under these circumstances, we reject appellants' claim that they were not given notice sufficient to comply with the requirements of Code Ann. § 81A-156 and *Smith v. Conley,* supra.

There is no question, however, that the renewed motion for summary judgment was granted without a second hearing. Nor do we find any question that such a hearing is required. We do not, however, find that the failure to conduct the hearing requires reversal of the judgment in this case.

Our reading of Code Ann. § 81A-156 reveals a clear legislative intent that a hearing be held at which oral argument may be made. Subsection (c) provides in pertinent part as follows: "The motion shall be served at least 30 days before the time fixed for *the hearing.* The adverse party prior to the day of hearing may serve opposing affidavits." (Emphasis supplied.) Subsection (d) provides as follows: "If on motion under this section judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court

*at the hearing of the motion,* by examining the pleadings and the evidence before it and *by interrogating counsel,* shall . . . ascertain what material facts exist without substantial controversy . . ." (Emphasis supplied.) The language emphasized above indicates strongly that a hearing is to be held for the benefit of the parties and for the benefit of the court.

We are aware that there exists a body of federal case law interpreting Rule 56 of the Federal Rules of Civil Procedure and holding that an opportunity to present argument by brief and evidence by affidavit satisfies the requirements of due process. See, e.g., Kibort v. Hampton, 538 F2d 90, 91 (5th Cir. 1976); Allen v. Beneficial Finance Co., 531 F2d 797 (7th Cir. 1976). We do not find those cases persuasive. The federal courts are sufficiently dissimilar from the courts of this state in organization and administration to permit variation in interpretation of the rules by which procedure in those courts is determined. We hold that Code Ann. § 81A-156 requires that a hearing date be set and a hearing conducted before a motion for summary judgment is granted. The failure of a trial court to do so is error.

Appellee argues that appellants waived a hearing in this case. We do not agree. Although we have held that the newspaper notice that the motion was under consideration sufficed to put appellants on notice that a judgment was imminent, we are not willing to go so far as to hold that their failure to demand a hearing, i.e., their failure to take affirmative action to secure a right given them by statute, constituted a waiver of that right.

Ancillary to appellee's argument concerning waiver is its assertion that the local rules of the trial court authorized the grant of the motion without hearing. Rule 21 of the Rules of the Superior Court of Fulton County was made a part of the record below. It provides as follows: "All motions and other non-jury matters shall be decided by the Court without a hearing, unless otherwise ordered by the Court on its own motion, or in its discretion upon request of counsel." We find that the requirement that litigants seek a hearing or waive it and the investment of the trial court with discretion to deny to parties a right granted by statute contravenes the procedure established by the Civil Practice Act. That may not be done by local court rules. *Auerback v. Maslia,* 142 Ga. App. 184 (6) (235 SE2d 594). Accordingly, we reject appellee's claim that a waiver occurred.

It could be argued from the peculiar circumstances of this case, the denial after hearing of the same motion by one judge, the reassignment of the case to another judge, and the grant of the motion by that second judge, that appellants had the hearing to which they were entitled. We disagree. The obvious purpose of a hearing on a

motion for summary judgment is to provide counsel with an opportunity to persuade the court and to provide the court with an opportunity to interrogate counsel. Neither of those purposes is served by a hearing held by another judge. We find the trial court's failure to hold a hearing on appellee's renewed motion for summary judgment to be error.

We do not find, however, that the error warrants reversal. It is axiomatic in Georgia appellate law that an appellant, to secure a reversal, must show not only error but harm. See, e.g., *Mahone v. State,* 120 Ga. App. 234 (3) (170 SE2d 48). As the record stands in this case, judgment for appellee is demanded. Appellants make no claim that there would have been any addition to the record or that a hearing would have changed the state of the record in any way. Under the particular circumstances of this case, we find the erroneous failure of the trial court to hold a hearing on appellee's renewed motion for summary judgment to have been harmless.

3. Having disposed of the procedural issues, we must turn to the substantive question: Was appellee entitled to judgment as a matter of law? We conclude that it was.

National and Premium have both been involved in the wine business in Georgia for many years. The exact nature of their business relationship is controverted, but all parties agree that National has always purchased wine from wineries, paid the Georgia tax on the wine, and sold the wine to Premium and other companies for resale to retailers.

In 1971, the Department of Revenue promulgated certain regulations concerning the wine business. One of those required that wineries designate a particular wholesaler as their "designated wholesaler" for various regions of the state. In response to that regulation, the wineries involved in this matter designated National. That designation has led to administrative hearings and litigation.

In 1973, the Commissioner of Revenue conducted a hearing in response to a complaint filed by Premium in which Premium sought, among other things, to question National's status as the designated wholesaler. That hearing resulted in an order which purported to recognize Premium as the designated wholesaler for the wineries involved. An amendment to that order required the parties to continue the arrangement established through years of custom: National bought the wine, paid the tax, and resold the wine to Premium.

Another such complaint in 1975 prompted National to bring this action for a declaratory judgment. National sought a declaration that the Commissioner had no authority to conduct such proceedings as had led to the 1973 order and which the Commissioner had again

begun pursuant to Premium's complaint. National also sought a declaration that the 1973 order naming Premium the designated wholesaler was an ultra vires act since the Commissioner lacked the authority to conduct the hearing in the first place.

A motion for summary judgment filed by the Commissioner was denied and that denial was affirmed by the Supreme Court. *Chilivis v. National Distributing Co.,* 239 Ga. 651 (233 SE2d 431). After the return of the case to the trial court, further motions were made and denied. Finally, National was awarded summary judgment, the judgment from which this appeal is taken.

Appellants devote significant portions of their briefs to recitations of issues of fact which remain controverted. What appellants have failed to recognize is that the remaining issues of fact are not material to a disposition of this case.

The first material issue involved is the validity of the 1973 proceeding and the order which resulted therefrom. We agree with the trial court that this is an issue of law to be determined by the laws and regulations applicable to the control by the state of the alcoholic beverage industry. Revenue Regulation 560-8-7-.15 as it existed in 1973 provided for a designation by the *wineries* of exclusive wholesalers for particular areas of the state. It also provided a specific procedure for changing designations, including a hearing when a *winery* sought to change designations. Nowhere in the regulation was there any provision for a hearing in response to a request by a wholesaler. In fact, there was no provision whatever for a wholesaler to complain about a designation.

In *Chilivis,* the Supreme Court ruled that the Commissioner was acting beyond his authority in ordering National to participate in a proceeding initiated by Premium's filing of a complaint. "An administrative officer cannot exercise judicial functions not conferred on him by law. The order by the commissioner requiring National to answer the complaint of Premium was beyond the scope of his authority and void. [Cits.]" Id., p. 655. Comparing the 1973 complaint at issue here with the 1975 complaint the Supreme Court addressed, we find no substantive difference. In both, Premium sought to have its position with relation to National and with relation to the wineries changed by administrative action. The Commissioner had no more authority to do so in 1973 than he did in 1975. We hold, therefore, in accordance with the Supreme Court's holding, that the trial court in the present case was correct in ruling that the Commissioner lacked authority to enter the 1973 order, rendering that order void.

The trial court's second holding, that the record shows National to be the "designated wholesaler," follows imperatively from the

holding that the 1973 order was void. The wineries designated National as their exclusive wholesaler in the first designation made under the regulation promulgated in 1971. That regulation and its successors contain provisions for changing designations. All the parties agree that the official method for changing designations has never been employed. Under those circumstances, it is clear that National has been and remains the "designated wholesaler" for the wineries involved since the first designation made by those wineries under the regulation promulgated in 1971. The trial court was, therefore, correct in granting summary judgment to appellee on that issue.

*Judgment affirmed. Quillian, C. J., and Carley, J., concur.*

DECIDED FEBRUARY 25, 1981.

*Paul L. Hanes,* for appellant (case no. 60944).

*Arthur K. Bolton, Attorney General, David A. Runnion, Assistant Attorney General, Mary Grace Diehl, Carl E. Sanders, Jonathan Golden,* for appellees.

*Arthur K. Bolton, Attorney General, David A. Runnion, Assistant Attorney General,* for appellant (case no. 60945).

*Mary Grace Diehl, Carl E. Sanders, Jonathan Golden, Paul L. Hanes,* for appellees.