## 66743. DIXON et al. v. MIDLAND INSURANCE COMPANY et al.

Birdsong, Judge.

This action was initiated by appellants, husband and wife, to obtain a declaration of coverage, later converted to a claim for attorney fees, for appellant Larry Dixon pursuant to two public liability insurance policies issued to Glynn County by appellees Cherokee Insurance Company (Cherokee) and Midland Insurance Company (Midland). A declaratory judgment was also sought against appellee North River Insurance Company (North River) pursuant to a policy of homeowner's insurance issued to appellants. The trial court granted the motion for summary judgment filed by each appellee.

This action arises from a complaint for malicious prosecution, false imprisonment, false arrest, and civil rights violations filed by Lindsey Scott against appellants on August 25, 1981. Scott alleged that he purchased a truck from Larry Dixon on January 21, 1980, pursuant to special arrangement regarding financing and down payment. The complaint further alleged that Dixon swore out a warrant for Scott's arrest on August 6, 1980, for the offense of "endangering a security interest." The warrant remained in Dixon's possession until January 19, 1981, at which time Scott was arrested pursuant to the warrant. The warrant and arrest formed the gravamen of Scott's complaint.

It is undisputed that Dixon served as a Glynn County Commissioner until December 31, 1980. It is also undisputed that Dixon's actions in connection with the Scott matter had nothing to do with his job as county commissioner, but rather concerned his used car business. However, Scott, in an apparent attempt to bolster his cause of action based on 42 USC § 1983, alleged in his complaint that "Dixon, used his position, power and influence as a member of the Board of Commissioners of Glynn County, Georgia to cause issuance of said warrant. . . ." The complaint also alleged that "while Dixon had ceased to be a member of the Board . . . approximately three weeks prior to [Scott's] arrest . . . in causing and bringing about [Scott's] arrest as aforesaid, [he] used the power and influence he had acquired during his term of office and . . . used the Glynn County Police Department and certain members thereof for and in pursuant of his own personal individual interests." It is these allegations of malfeasance that have given rise to appellants' claim that they are entitled to coverage and defense under the Cherokee and Midland policies. Appellants do not argue that Mrs. Dixon would be covered under either of these policies. The trial court agreed with appellees

that the clear language of each policy, including that of North River, excluded coverage, and appellants challenge that decision on appeal.
*Held:*

1. Appellants' first enumeration of error charges that the trial court erred in granting summary judgment to each appellee despite the fact that no hearing was held on any of the motions. However, the order granting summary judgment specifically recites that "the parties have waived oral argument." The record contains nothing to belie this assertion by the trial court. Accordingly, it was not error for the trial court to dispose of the motions without an OCGA § 9-11-56 (c) (Code Ann. § 81A-156) hearing.

2. Appellants also contend in their first enumeration that the trial court's order was entered prior to the expiration of thirty days from service of Midland's motion for summary judgment. The record demonstrates that the order was entered on the thirtieth day following the service of Midland's motion. The thirty-day requirement of OCGA § 9-11-56 (c) (Code Ann. § 81A-156) was easily satisfied by the contemporaneous order on the Cherokee and North River motions, and the judgment on those motions as to these two appellees is not subject to attack on this ground.

However, we agree that the trial court erred in granting Midland's motion. "[I]t is error to grant final relief without giving the party opposing the motion the statutory requirement of notice prior to a hearing on the merits of the claim for final relief. [Cit.]" *Royston v. Royston,* 236 Ga. 648, 650 (225 SE2d 41). "[I]t is error to grant a motion for summary judgment without affording the opposite side the time provided or without giving notice or the opportunity to be heard." *Peoples Financial Corp. v. Jones,* 134 Ga. App. 649, 650 (215 SE2d 711).

Midland argues that appellants must show harm resulting from the trial court's failure to comply with the mandate of OCGA § 9-11-56 (c) (Code Ann. § 81A-156) before the judgment is subject to reversal. In support of this proposition, Midland cites *Ramsey Winch Co. v. Trust Co. Bank,* 153 Ga. App. 500 (4) (265 SE2d 848). Also see *Premium Dist. Co. v. National Dist. Co.,* 157 Ga. App. 666 (2) (278 SE2d 468), which engrafted onto OCGA § 9-11-56 (c) (Code Ann. § 81A-156) a requirement that an appellant must show prejudice as a result of the trial court's failure to hold a hearing on a renewed motion for summary judgment. However, neither *Ramsey Winch* nor *Premium Dist.* is analogous to the present case. In *Ramsey Winch,* the court was faced with the inescapable conclusion that the appellant was not harmed by the entry of an order prior to the expiration of thirty days because the appellant's own evidence unequivocally demonstrated that judgment for the appellee was

demanded. The appellant also failed to raise the procedural defect during the hearing on the motion. Likewise, in *Premium Dist.,* supra, p. 670, the record clearly demanded judgment for the appellee. Furthermore, *Premium Dist.* dealt with the trial court's failure to grant a hearing, as required by OCGA § 9-11-56 (c) (Code Ann. § 81A-156), on a renewed motion for summary judgment after the original motion had been heard. On the basis of the record, the appellant therein could not conceivably have been harmed by the trial court's failure to hold a hearing on the renewed motion.

OCGA § 9-11-56 (c) (Code Ann. § 81A-156) mandates that any party have thirty days to respond to a motion for summary judgment. We hesitate to emasculate the thirty-day rule by holding, in essence, that a non-movant must demonstrate on appeal that the movant was not entitled to summary judgment on the pre-judgment record or on evidence presented after judgment that he would have presented to the trial court before judgment. Compliance with the rule is a simple and elemental matter that should be insured by reversal and remand unless the evidence shows the non-movant's defenses to the motion to be specious. We hold that unless the record unequivocally demonstrates that the non-movant's defenses to the motion are wholly meritless and frivolous or the non-movant fails to raise the procedural defect at the hearing, as in *Ramsey Winch,* supra, the trial court's entry of an order on the motion prior to the expiration of thirty days from its service is reversible error, even though the trial court may ultimately determine on renewed motion that the movant is entitled to summary judgment. The record in this case does not support abrogation of the thirty-day rule. Accordingly, the trial court erred in granting Midland's motion. We emphasize, however, that we are not intimating any opinion on the merits of that motion.

The parties refer in their briefs to a local court rule, which is not a part of the record in this case, requiring a response within twenty days of the filing of a motion for summary judgment. As noted in *Premium Dist.,* supra, p. 669, the procedural requirements of OCGA § 9-11-56 (c) (Code Ann. § 81A-156) are mandatory and may not be contravened by local court rules. Thus, our decision would not be affected by a local court rule requiring a response in less than thirty days.

3. Appellants' claim that the trial court erred in entering summary judgment in favor of North River is without merit. The North River policy covers claims against appellants for bodily injury or property damage not arising "out of business pursuits" or the ownership of a motor vehicle. The "business pursuits" exclusion exempts activities that "are ordinarily incident to non-business pursuits." Appellants have admitted that the warrant against Scott

was procured as a result of dealings between Dixon and Scott arising out of the operation of Dixon's used car business. "Insurance is a contract and we will apply contract law principles to issues involving insurance." *Wood v. State Farm Life Ins. Co.,* 146 Ga. App. 186, 188 (245 SE2d 876). "It is the function of the court to construe the contract as written and not to make a new contract for the parties [Cit.]. . . . An unambiguous contract will be construed to carry out the literal intent of the parties." *Cincinnati Ins. Co. v. Gwinnett Furniture Mart,* 138 Ga. App. 444, 446 (226 SE2d 283). The contract of insurance between North River and Dixon unambiguously states that liability coverage is not provided for claims arising from "business" pursuits; the matter between Dixon and Scott indisputedly arose from Dixon's used car business. Consequently, the North River policy afforded no liability coverage for the incident.

Appellants argue that the activities undertaken by Dixon against Scott fell within an exception to the "business pursuits" exclusion that provided that the exclusion does not apply to "activities which are ordinarily incident to non-business pursuits." We cannot accept appellants' contention. "There are relatively few functions, such as walking, opening and closing doors, bending or standing that a person performs in a business that cannot be viewed in isolation as nonbusiness activity. . . .[T]o treat these activities in isolation as incidental to nonbusiness activity would render [the business pursuits] exclusion meaningless." Appleman, Insurance Law and Practice (Berdal ed.), § 4501.10, p. 277. Dixon's actions forming the basis of Scott's complaint arose solely from Dixon's business pursuits and are not covered by the North River policy. Any other construction of that policy would render the "business pursuits" exclusion meaningless. An insurance policy must be construed as a whole *(West v. Rudd,* 242 Ga. 393, 395 (249 SE2d 76)), and "all of the provisions should be so interpreted so as to harmonize one with the other." *Guarantee Trust Life Ins. Co. v. Davis,* 149 Ga. App. 826, 828 (256 SE2d 76), reversed in part on other grounds, 244 Ga. 541 (261 SE2d 336). Since the record establishes no genuine issue of material fact as to North River's liability to appellants, the trial court properly granted North River's motion for summary judgment. OCGA § 9-11-56 (Code Ann. § 81A-156).

4. Appellants' remaining enumeration of error challenging the trial court's grant of summary judgment to Cherokee is equally lacking in merit. Appellants' challenge is based upon their contention that the Scott complaint alleges that Dixon committed a "wrongful act" while an "insured" under the Cherokee policy. A similar contention, but involving somewhat different legal issues, was made with respect to Midland but will not be considered herein due to our

holding in Division 2 above.

The Cherokee policy terminated on April 18, 1981, when the Midland policy went into effect. Two provisions provided potential coverage of this claim. The public official liability portion of the policy covered only claims made during the policy period against persons who were "insureds" at the time of the alleged "wrongful acts." Since Scott's action was not commenced until August 25, 1981, this policy provision by its express terms failed to provide coverage.

An additional provision of the Cherokee policy provided liability coverage for an "insured" for personal injury, including that arising from malicious prosecution and false arrest, inflicted on another in the conduct of Glynn County business. "Insured" is defined in part as follows: "(b) While acting within the scope of his duties as such: (1) Any member of the governing body of the Named Insured, (2) Any member of boards or commissions of the Named Insured, (3) Any elected or appointed official of the Named Insured, (4) Any employee of the Named Insured. . . ." It is clear that Scott's complaint contains no allegation that Dixon was either conducting Glynn County business or acting within the scope of his duties as commissioner at the time of the commission of the acts in question and Dixon expressly admitted as much. Thus, Dixon was not an "insured" under this coverage.

While it is true that "the allegations of the complaint are looked to to determine whether a liability covered by the policy *is asserted*" *(St. Paul Fire &c. Ins. Co. v. Mitchell,* 164 Ga. App. 215, 216 (296 SE2d 126)), " ' "a distinction must be drawn between groundless suits and actions which, even if successful would not be within the policy coverage." ' " *Great American Ins. Co. v. McKemie,* 244 Ga. 84, 85 (259 SE2d 39). Scott's action, in its present form, presents or alleges no controversy that could be construed to come within the coverage of the Cherokee policy. Accordingly, the trial court properly granted Cherokee's motion for summary judgment.

5. In view of our holding in Division 2 above, the judgment of the trial court awarding summary judgment to Midland must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Judgment affirmed in part and reversed in part and case remanded. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 14, 1983 —
REHEARING DENIED OCTOBER 6, 1983.

*Edward E. Boshears,* for appellants.

*Phillip R. Taylor, John W. Winborne III, Richard A. Brown, Jr.,* for appellees.

## On Motion for Rehearing.

In its motion for rehearing, Midland argues that the record in this case, as in *Ramsey Winch,* supra, renders the trial court's failure to comply with the OCGA § 9-11-56 (c) (Code Ann. § 81A-156) thirty-day rule harmless error. Midland asserts that the grounds for its motion were almost identical to the grounds for Cherokee's motion and that appellants had ample time to respond to the Cherokee motion. However, it is important to note that the grounds upon which this court affirmed the grant of Cherokee's motion differ completely from the grounds upon which Midland's motion was based. Midland's coverage is very similar to Cherokee's "claims made" coverage. The definition of "insured" under both policies' "claims made" coverage differs markedly from the definition of "insured" under the "personal injury" coverage contained in the Cherokee policy. As noted in Division 4 above, despite a less restrictive definition of "insured," the "claims made" portion of the Cherokee policy could not be involved in this case because that coverage terminated prior to the time Scott commenced his action against Dixon. However, Midland's policy was in force at the time Scott's claim was made. Consequently, Midland's motion was not based on either the policy definition of "insured" or the "claims made" feature of that coverage; rather, Midland alleged in its motion only that no "wrongful act," as that term is defined under the policy, was committed by Dixon. Because the "claims made" feature of this coverage provides a clear and palpable basis for affirming the grant of that portion of Cherokee's motion, we have not reached the question of whether Scott's complaint alleged a claim based upon an alleged "wrongful act" committed by Dixon. Without exploring the substance of the latter issue, and certainly without intimating any opinion as to the merits of Midland's motion, it is clear from a close reading of the policy language that Midland's motion presents a more difficult question of policy interpretation with respect to the "claims made" coverage than did Cherokee's motion. In the context of the record in this case, we do not feel that the Midland motion is based upon grounds so indisputable as to render patently specious any defense to the motion and the trial court's failure to adhere to the thirty-day requirement harmless as a matter of law. Were we to rule otherwise in this case, we would in effect be holding that the failure to adhere to the thirty-day requirement is never a bar to appellate review of the merits of any judgment entered on a motion for

summary judgment, a result which would render the requirement totally unenforceable.

*Motion for rehearing denied.*