Alton V. **HALLUM,** Jr., Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,**
Defendant.

**No. CIV.A. 1:00–CV–1159–CAP.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 10, 2001.

Glenn Scott Bass, Tammy Spivack Skinner, Goldner Sommers Scrudder & Bass, Atlanta, GA, for plaintiff.

H. Sanders Carter, Jr., Kenton Jones Coppage, Richard Philip Hamilton, Carter & Ansley, Atlanta, GA, for defendant.

### ORDER

PANNELL, District Judge.

The plaintiff filed the instant action, seeking a declaratory judgment for disability benefits under certain provisions of his insurance policy. The matter is presently before the court on the parties' cross motions for summary judgment.

In analyzing a summary judgment motion, the court resolves all issues of fact in favor of the non-movant. *See Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir.1996). As both parties have filed a motion for summary judgment, the court states the facts of the case in the light most favorable to the party opposing the others' motion. Therefore, the facts, as stated below, may not prove to be the facts that would be established at trial. *See Hartsfield v. Lemacks*, 50 F.3d 950, 951 (11th Cir.1995) (citing *Rodgers v. Horsley*, 39 F.3d 308, 309 (11th Cir.1994)).

### I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The plaintiff is a medical doctor who specialized in the practice of obstetrics and gynecology. On April 1, 1998, at age 61, the plaintiff was declared totally disabled from performing his occupation due to bilateral injuries to the median nerves in his hands, more commonly known as carpal tunnel syndrome (hereinafter "CTS").

Beginning on March 1, 1987, the defendant insured the plaintiff under a disability income policy (hereinafter "the Policy"), which provides lifetime disability benefits for total disability that occurs before the age of 65 if the disability is due to injury. The Policy also provides lifetime disability benefits for presumptive disability if an injury or sickness results in the entire permanent loss of the use of both hands. Further, the Policy provides benefits for 48 months for a total disability starting at age 61 but before age 62 if the disability is due to sickness.

The defendant approved the plaintiff's claim for disability benefits under the sickness provision. The plaintiff contends that his claim should be treated as one for disability based on an injury and/or presumptive total disability. The defendant, however, refuses to provide benefits under either of these provisions. The plaintiff's rights and the defendant's obligations under the Policy differ, depending upon which provision is enforced. Accordingly, the plaintiff filed the instant declaratory judgment action seeking the court's determination of whether: (1) the plaintiff's disability is due to injury or sickness as such terms are defined in the Policy; (2) the plaintiff is entitled to disability benefits under the injury provision of the Policy; and (3) the plaintiff is entitled to disability benefits under the presumptive total disability provision of the Policy.

The defendant in its motion for summary judgment asks the court to determine whether: (1) the plaintiff's disability is "due to Injuries," defined as "accidental bodily injuries occurring while [his] policy [was] in force;" and (2) the plaintiff has suffered "the entire and permanent loss of ... the use of both hands" so as to be presumptively disabled within the terms of his policy. Essentially, the defendant argues that the plaintiff's disability is not due to accidental bodily injuries as contemplated by the policy. Even assuming that his condition could be due to "injuries," such injuries were not caused by accidental means. Moreover, the defendant contends that the plaintiff is not entitled to benefits under the presumptive total disability provision of the policy, because he

has not lost the entire and permanent use of his hands.

The underlying basis for the plaintiff's disability claim is his CTS, which results when the median nerve, which runs into the wrist through an opening called the carpal tunnel, is injured. The median nerve runs into the hand to supply sensation to the thumb, index finder, long finger and half of the ring finger. The nerve also supplies a branch to the muscles of the thumb, which helps move the thumb.

According to the plaintiff, from the onset of his injury in 1994 through April, 1997, his symptoms worsened due to the repetitive use of his hands, which is necessary to his profession, such as grasping surgical instruments and flexing of the wrists to perform vaginal examinations. Despite the use of hand splints, steroid injections and ultimately surgery, the plaintiff's physicians diagnosed his condition as permanent and irreversible. As a result of persistent pain and numbness in his fingertips, the plaintiff became unable to use his hands to accomplish the required tasks of his profession. The plaintiff's treating physicians declared him totally disabled from his occupation as an obstetrician/gynecologist and on April 1, 1998, he stopped seeing patients. The defendant did not request that the plaintiff undergo an independent medical evaluation, which it can require under the terms of the policy.

The defendant maintains that the plaintiff's disability is due to a sickness and not an injury. The defendant points out that prior to the onset of his CTS symptoms in 1994, the plaintiff sustained no injury or trauma to his hands, such as a sprain or a broken bone. The plaintiff was told by his treating physicians that his condition had developed over an extended period of time.

According to Dr. Kirkpatrick, one of the plaintiff's treating physicians, the question of whether CTS results from an injury or

from a disease "is extremely controversial among hand surgeons and ... there is no scientifically correct answer at this point in time. There is a strong body of literature supporting that carpal tunnel syndrome is a work related condition and another body of literature stating that it's not." Defendant's Memorandum in Support of Its Motion for Summary Judgment at 7 (quoting Kirkpatrick deposition at 8).

Since his retirement, the plaintiff has remained active, playing golf two or three times per week and fly-fishing. The defendant contends that for everyday matters, the plaintiff has not lost any real use of his hands. *Id.* at 11.

## II. *LEGAL DISCUSSION*

### A. *Legal Standard For Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *see also Bingham, Ltd. v. United States,* 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

*See Bradbury v. Wainwright,* 718 F.2d 1538, 1543 (11th Cir.1983). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *See Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510.

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the non-movant. *See id.* In order for factual issues to be "genuine" they must have a real basis in the record. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. "When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citations omitted).

### B. *The Disability Income Policy Provisions*

The plaintiff contends that he is entitled to lifetime disability benefits under both of the Policy's two benefit triggering clauses: the Total Disability and Presumptive Total Disability provisions.

Total disability is defined in the policy as follows:

"Total Disability or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability."

Disability Income Policy at 4–5 (Ex. A to Plaintiff's Motion for Summary Judgment) [Doc. No. 17–1]. While the court finds that there is no issue as to whether the plaintiff qualifies as totally disabled under the policy, the duration of the benefit period turns on the proper classification of the condition rendering him totally disabled. The plaintiff argues that if CTS is classified as an "injury," then he will be entitled to lifetime disability benefits. Conversely, if CTS is classified as a "sickness," he will only be entitled to benefits until the age of 65.[1] The plaintiff concludes that the rec-

---

1. The Policy provides:

"Injuries:

| | |
|---|---|
| Total Disability starting before age 65 | for Life |
| Total Disability starting at age 65 but before age 75 | 24 months |
| Total Disability starting at or after age 75 | 12 months |

Sickness:

| | |
|---|---|
| Total Disability starting before age 60 | for Life |
| Total Disability starting at age 60 but before age 61 | to age 65 |
| Total Disability starting at age 61 but before age 62 | 48 months |
| Total Disability starting at age 62 but before age 63 | 42 months |
| Total Disability starting at age 63 but before age 64 | 36 months |
| Total Disability starting at age 64 but before age 65 | 30 months |
| Total Disability starting at age 65 but before age 75 | 24 months |
| Total Disability starting at or after age 75 | 12 months" |

Disability Income Policy at 3 (Ex. A to Plaintiff's Motion for Summary Judgment) [Doc. No. 17–1]

ord conclusively demonstrates that his CTS is properly classified as an injury, and thus he is entitled to lifetime disability benefits.

Presumptive Total Disability is defined as follows:

> "You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:
>
> 1. speech;
> 2. hearing in both ears;
> 3. the sight of both eyes; or
> 4. the use of both hands, or of both feet or of one hand and one foot.
>
> You must present satisfactory proof of your loss. Your ability to work will not matter. Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss . . . ."

Disability Income Policy at 4–5 (Ex. A to Plaintiff's Motion for Summary Judgment) [Doc. No. 17–1]. The plaintiff argues that his CTS is a condition that invokes the presumption of total disability. In addition, because the CTS occurred prior to age 65, he is entitled to lifetime disability benefits pursuant to the Presumptive Total Disability provision of the Policy.

### C. *The Defendant's Contentions*

Initially, the defendant argues that the plaintiff's disability did not occur due to "accidental bodily injuries occurring while [his] policy was in force." Disability Income Policy (Ex. A to Plaintiff's Motion for Summary Judgment) [Doc. No. 17–1]. The defendant contends that the plaintiff cannot identify any specific accidental bodily injury or traumatic event that caused his condition. Rather, the defendant argues that the undisputed evidence shows that the plaintiff's condition resulted from the repetitive use of his fingers, hands, and wrists.

Along similar lines, the defendant also argues that the plaintiff cannot establish that his alleged "injuries" occurred while his policy was in force, because it is undisputed that his condition developed over a period of 25 to 30 years, during most of which the policy was not in force. Essentially, the defendant charges that the plaintiff's claimed date of disability, April 1, 1998, is immaterial because it is the underlying injuries, and not the resulting disability, which must occur while the Policy is in force.

Alternatively, if the court finds that the plaintiff's condition is due to "injuries," the defendant contends that he still may not recover, because his "injuries" were not caused by accidental means, but rather were the accidental results of voluntary and intentional acts. *See Laney v. Continental Ins. Co.*, 757 F.2d 1190 (11th Cir. 1985); *but cf. Buce v. Natl. Serv. Indus., Inc.*, 74 F.Supp.2d 1272 (N.D.Ga.1999).

Finally, as a collateral matter, the defendant argues that under Georgia law the plain and ordinary meaning of the Policy is that the plaintiff may recover under the Presumptive Total Disability provision only if he can establish that he cannot use his hands at all. The defendant argues that the plaintiff has not lost the "entire and permanent" use of his hands and, thus, he is not entitled to the Presumptive Total Disability provision benefits.

### D. *Georgia Insurance Law*

■ The provision of the Policy establishing the disability coverage defines total disability as total disability due to injuries or sickness which prevents the insured from performing the substantial and material duties of his occupation. The nature

of the plaintiff's practice requires the performance of pelvic examinations, which require small hand motions with the hand cocked or dorsiflexed to allow him to work inside the vagina. The same type of hand motions are necessary for performing pap smears, culture swabs, biopsies, surgery, and delivering babies.

The plaintiff's treating physician, Dr. Kirkpatrick, testified that she did not know the definitive cause of the plaintiff's CTS. She explained in her deposition that she could not say for sure whether CTS was caused by heart disease, an isolated injury, or some undiagnosed sickness. *See* Kirkpatrick Depo. Tr. at 13–15. She could, however, definitively state that his CTS was aggravated by his job. *Id.* at 14. Similarly, Dr. Joseph testified that the plaintiff's CTS was due to a repetitive motion disorder caused by his occupation. *See* Joseph Depo. Tr. at 28–29, 36–37. He further testified that the plaintiff's condition developed over an extended period of time. *See Id.* at 31. Dr. Bernstein testified that he did not perform a clinical consultation on the plaintiff and therefore did not have an opinion on his CTS. Dr. Bernstein, however, stated that given a patient with the plaintiff's medical and occupational history he believed that CTS would be due to significant hand activity over the years such as surgery. *See* Bernstein Depo. Tr. at 20.

The defendant has not offered any medical testimony or other evidence to contradict the above-stated findings. While each of the plaintiff's treating physicians recognized that certain diseases have been linked to CTS, each testified that the plaintiff did not have any of those diseases. In sum there is no testimony nor record evidence that contradicts the plaintiff's contention that his CTS is due to an injury and not a sickness or disease. Accordingly, having exhaustively reviewed the rec-

ord, the court finds that the plaintiff's inability to carry-out his medical duties is well-documented in the record and repeatedly attested to by his treating physicians.

Moreover, the record indicates that the plaintiff made a claim for benefits to his worker's compensation carrier in April, 1998, which was accepted as compensable. Under O.C.G.A. § 34–9–1, a compensable injury under the worker's compensation scheme includes injuries arising out of and in the course of one's employment, but explicitly excludes diseases in any form. *See Milledgeville State Hospital v. Clodfelter,* 107 S.E.2d 289, 99 Ga.App. 49, (1959) (the threshold question is "whether or not there was an accidental injury resulting in disability . . . ."). Thus, under Georgia workmen's compensation law, the plaintiff's disability is due to injuries. The plaintiff also points out that the defendant declined the opportunity to challenge the findings of the plaintiff's treating physicians despite its right to do so under the Policy.

■ To establish a prima facie case on a claim under a policy of insurance, the insured must show the occurrence was within the risk insured against. *See Donaldson v. Pilot Life Ins. Co.,* 177 Ga.App. 748, 749, 341 S.E.2d 279 (1986). Here, the plaintiff, using all the record evidence, has ably made the requisite showing. By contrast, essentially, the defendant argues that the plaintiff's CTS did not result from an "injury," because he cannot point to a singular event or trauma giving rise to his condition. The court disagrees. Although the defendant seeks summary judgment on various theories, only a few warrant the court's discussion.

### 1. *Policy Language Ambiguity*

■ An insurance contract, under Georgia law, should be construed to mean what a reasonable person in the insured's position would understand the terms to mean. *See Ga. Farm Bureau Mut. Ins. Co. v. Huncke*, 240 Ga.App. 580, 581, 524 S.E.2d 302 (1999). This means that the insurance policy must be construed in accordance with the reasonable expectations of the insured. *See Anderson v. Southern Guar. Ins. Co. of Ga.*, 235 Ga.App. 306, 309, 508 S.E.2d 726 (1998).

■ To determine the insurer's extent of liability under a policy, the court must consider all of those essential provisions which fix, create, limit, or enlarge liability. *See Fisher v. American Cas. Co.*, 194 Ga. 157, 159, 21 S.E.2d 68 (1942). The insurer, in preparing the language of its policy, has the burden of using language that is clear and precise. *See Travelers Indem. Co. v. Whalley Const. Co., Inc.*, 160 Ga.App. 438, 440, 287 S.E.2d 226 (1981). Where the terms and conditions of an insurance policy are clear and unambiguous, such terms must be given their literal meaning. *See Adams v. Atlanta Cas. Co.*, 235 Ga.App. 288, 289(1), 509 S.E.2d 66 (1998).

■ Ambiguity in an insurance policy is duplicity, indistinctiveness, uncertainty of meaning of expression, and words or phrases which cause uncertainty of meaning and may be fairly construed in more than one way. *See Allstate Ins. Co. v. Grayes*, 216 Ga.App. 419, 422(3), 454 S.E.2d 616 (1995). Where a term or phrase of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such terms and phrases are ambiguous as a matter of law and will be strictly construed against the insurer and in favor of the insured. *See* O.C.G.A. § 13–2–2(5); *and see Ga. Farm Bureau Mut. Ins. Co.*, 240 Ga.App. at 580,

524 S.E.2d 302. Where the phrasing of the policy is so confusing that an average policyholder cannot make out the boundaries of coverage, the policy is genuinely ambiguous. *See Ga. Baptist Children's Homes & Family Ministries, Inc. v. Essex Ins. Co.*, 207 Ga.App. 346, 347(1), 427 S.E.2d 798 (1993).

■ Exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and liberally construed in favor of the insured to afford coverage. *See Nationwide Mut. Fire Ins. Co. v. Erwin*, 240 Ga.App. 816, 817, 525 S.E.2d 393 (1999). While insurance is a matter of contract, not sympathy, the policy is to be construed liberally in favor of the object to be accomplished. *See Cincinnati Ins. Co. v. Gwinnett Furniture Mart. Inc.*, 138 Ga.App. 444, 446, 226 S.E.2d 283 (1976). An insurance policy is construed most strongly against the insurer and liberally in favor of the insured, particularly where the insurer seeks to deny coverage based upon a policy exclusion. *See Hartford Life Ins. Co. Inc. v. Crumbley*, 169 Ga.App. 847, 849, 315 S.E.2d 54 (1984).

Putting aside the fact that the defendant has failed to dispute any material facts and that the entire weight of the evidence is in favor of the plaintiff's position, the court addresses the ambiguity of the instant policy language to reiterate its position that the onus of drafting and selecting specific policy language to carve out certain limitations on its liability rests with the defendant. Here, the defendant has failed to effectively restrict its policy language in sufficient detail and thus the ambiguity must be resolved in favor of the plaintiff. Accordingly, in light of the defendant's failure to delineate what constitutes an injury or a sickness and its failure to provide in the Policy the extent of its liability when there is competing science on the causes of a disability, having found the

instant policy language to be broadly written, unnecessarily vague, and unduly confusing, the court holds that the Policy must be construed in favor of coverage under the Policy's Total Disability provision.

## 2. *"Accidental Bodily Injuries"*

 The Policy defines injury simply as "accidental bodily injuries that occur while this policy is in force." In Georgia, there is "a very definite distinction between 'accidental injuries' and 'injuries resulting from accidental means.' Where an injury is unexpected but arises from a voluntary action it is an 'accidental injury,' but for an injury to result from accidental means, it must be the unexpected result of an unforseen or unexpected act which was involuntarily and unintentionally done." *Winters v. Reliance Standard Life Ins. Co.*, 209 Ga.App. 369, 370, 433 S.E.2d 363, 364 (1993) (citations omitted). The defendant argues that because the plaintiff's repetitive motion injuries resulted from voluntary, intentional conduct, he cannot categorize his disability as one resulting from "accidental injury." The defendant misapplies controlling precedent to the instant facts. *See Laney v. Continental Ins. Co.*, 757 F.2d at 1190. The instant policy language is very different from that considered in *Laney*. Having carefully weighed the parties' arguments and studied the record, the court finds that the defendant's use of the term "accidental" in the Policy is used to describe the nature of the injury itself, and not the cause of the injury. Thus, the restrictive Policy interpretation of the term "accidental" advanced by the defendants is rejected.

## 3. *Policy Timing*

The defendant's argument that the plaintiff's injuries could have occurred outside of the Policy period is equally unavailing. Such bare assertions with absolutely no record facts to contradict the plaintiff's overwhelming showing to the contrary will not preclude the grant of summary judgment in favor of the plaintiff. Moreover, the court notes that the Policy appears to contain an express waiver, stating:

> "No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this policy."

Disability Income Policy at 17 (Ex. A to Plaintiff's Motion for Summary Judgment) [Doc. No. 17–1].

The defendant had, by contract and through discovery, the opportunity to dispute the assertions made by the plaintiff's treating physicians. It failed to do so. Simply, there is no record evidence supporting the classification of the plaintiff's condition as a sickness or disease. The undisputed record clearly demonstrates that the plaintiff has carried its burden under the Policy and on summary judgment that it is entitled to lifetime benefits under the Policy's Total Disability provision. Accordingly, the court does not address the merits of the Presumptive Total Disability provision.

## III. *CONCLUSION*

For the foregoing reasons, the court hereby GRANTS the plaintiff's motion for summary judgment [Doc. No. 17–1] and DENIES the defendant's motion for summary judgment [Doc. No. 19–1].