A94A1368. MODESITT et al. v. WAFFLE HOUSE, INC.
(444 SE2d 412)

BLACKBURN, Judge.

Appellants, Diana Modesitt and Jon Modesitt, individually and as administrator of the estate of Jeffery Modesitt, appeal the trial court's order granting defendant Waffle House, Inc.'s motion for summary judgment. Appellants contend that the existence of genuine issues of material fact preclude summary judgment and that the trial court erred by not considering certain evidence.

1. In their second and third enumerations of error, appellants assert that the trial court erred in failing to consider certain evidence.

However, the trial court states in its order that it reviewed and considered the entire record prior to making its decision. The trial court does not make specific findings of fact and appellants fail to produce any evidence which suggests that the trial court did not consider the entire record. See *Vaughn & Co. v. Saul*, 143 Ga. App. 74 (5) (237 SE2d 622) (1977). Therefore, these enumerations are without merit.

2. In their first enumeration of error, appellants contend that genuine issues of material fact exist as to whether, on August 3, 1990, the employees of Waffle House failed to respond appropriately to notice of danger, and the potential for harm to their patrons.

Our review of the record reveals that appellants' decedent, Modesitt, was shot and killed by Mark Graetz, in the early morning hours, in the parking lot of a Waffle House restaurant. Prior to the shooting incident, a female patron complained to one Waffle House employee that Graetz was "in the parking lot f _ _ _ing himself" and to another employee that Graetz was "in the parking lot urinating." The patron requested that the employee call the police. Waffle House employee, Kyle Artis, averred that he went to the front door of the restaurant, looked out, and saw Graetz but it appeared Graetz was leaning against his car doing nothing.[1]

The complaining patron sat in a booth by the front window with two other women. They had arranged to meet Modesitt and his friend, Mark DeDecker, at the Waffle House. Modesitt and DeDecker arrived in separate cars. Modesitt parked by the front window, near the booth in which the women sat. Modesitt obtained a golf club from his vehicle and began to take practice swings in front of the window. Thereafter, Modesitt and DeDecker came into the restaurant and sat with the three women. Graetz was sitting in the restaurant with a friend, one booth away. The women pointed to Graetz and told Modesitt and DeDecker that Graetz had been in the parking lot "masturbating or urinating." During his deposition, DeDecker described the women as being "disgusted," by Graetz's behavior, but said they were all laughing at Graetz. Graetz heard them laughing at him and he yelled "shut up" at them.

Modesitt and DeDecker talked with the women for a few minutes and DeDecker got up and spoke to a waitress about placing an order. DeDecker deposed that upon his return to the booth, Graetz looked at him and with a raised voice said, "Shut up, you stupid nigger." Graetz repeated his comment and then "stormed out" of the restaurant. Graetz deposed that he said "dumb nigger" before leaving the restaurant. DeDecker deposed that Modesitt said, "Well, let's go

---

[1] Appellants filed the transcript of the criminal proceeding with the trial court; however, such transcript is inadmissible hearsay in this action, and was not considered by this court.

outside and see what he wants."[2] On Modesitt's way out, Kyle Artis heard him say he was "going to kick [Graetz's] ass." The evidence is undisputed that Graetz never approached Modesitt's booth or made any threatening physical movements toward the occupants of that booth. It is further undisputed that a verbal altercation did not take place inside the restaurant; Graetz repeated his comment and left. In fact, one of the patrons did not notice anything until after Graetz left the restaurant; he averred "[he] was inside the Waffle House finishing [his] breakfast when [he] realized that there was an *argument going on in the parking lot.*" (Emphasis supplied.)

DeDecker deposed, "I thought he [Graetz] was going to take off, you know, leave. But he opened up his door and reached under his seat or behind his seat and then I . . . saw he had a gun. And I told Jeff, I said, 'Look, this guy's got a gun. Let's just go inside, forget it, you know.' And Jeff said, 'Go call the police.' " A Waffle House employee was already using the phone to call the police when DeDecker walked over to it.[3]

Thereafter, a verbal altercation ensued between Modesitt, DeDecker, and Graetz in the parking lot. Modesitt told Graetz, "If you're going to use that gun, you'd better kill me"; and Graetz responded, "You shouldn't have said that." DeDecker deposed that Graetz was "saying a lot of fighting words [and] . . . Jeff [Modesitt] was just responding." Prior to the arrival of the police, Graetz shot and killed Modesitt.[4]

"A proprietor's duty to invitees is to exercise ordinary care in keeping the premises and approaches safe. OCGA § 51-3-1. The proprietor is not the insurer of the invitee's safety, but is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has superior knowledge. If the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters." (Citations and punctuation omitted.) *Good Ol' Days Downtown v. Yancey*, 209 Ga. App. 696, 697-698 (434 SE2d 740) (1993). Appellants contend the death resulted from escalating violence that began in the presence of Waffle House employees and that the employees failed to exercise ordinary care by failing to summon the police.

Whether the proprietor fulfilled its duty to exercise ordinary care in protecting its customers is a jury question "unless the allegations

---

[2] Modesitt was approximately 6′5″ tall and 220 pounds and DeDecker was approximately 6′4″ tall and 235 pounds, at the time of this incident.

[3] The Waffle House did not have a phone on the inside of the restaurant from which an outgoing call could be placed; therefore, the employee had to use the pay phone directly outside the front door to call the police.

[4] After a criminal trial, Graetz was convicted of voluntary manslaughter.

or evidence show beyond controversy that there was no such breach of duty." (Punctuation omitted.) *Shell Oil Co. v. Diehl*, 205 Ga. App. 367, 368 (422 SE2d 63) (1992). In the present case, it is undisputed that a Waffle House employee called the police immediately after Graetz produced the gun. Furthermore, our review of the record reveals that Graetz produced the gun within a minute, if not seconds, of making his comments inside the restaurant. All witnesses agreed that Graetz left the restaurant after he repeated his comment to Modesitt and DeDecker and that Graetz's car was parked across the Waffle House parking lot within view of the restaurant. It is also clear that Modesitt followed Graetz outside.

Under the facts of this case, we find that Waffle House acted reasonably in fulfilling its duty toward Modesitt by calling the police after Modesitt and DeDecker followed Graetz outside and Graetz produced the gun. As Waffle House negated an essential element of the plaintiffs' case, i.e., breach of duty, the trial court was correct in granting Waffle House's motion for summary judgment. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MAY 27, 1994.

*David W. Boone, Leigh M. Smith, Lyle G. Woodruff*, for appellants.

*Swift, Currie, McGhee & Hiers, James B. Hiers, Jr., Susan A. Dewberry*, for appellee.