### 53986. VAUGHN & COMPANY, LTD. et al. v. SAUL et al.

WEBB, Judge.

Three loans from the Saul Trust to the Vaughns (Loans 448, 462 and 465) were made at separate times, and each involved a separate promissory note secured by a separate deed to secure debt. Each deed covered a different parcel of property. Saul Trust by exercise of the power of sale foreclosed on the property conveyed as security for Loan 462 (note for $3,100,000 dated June 21, 1974), and was the purchaser at the public sale in Cobb

County on the first Tuesday of April, 1976. As the advertisement for the foreclosure sale was being published, Saul Trust filed in Fulton Superior Court a complaint on the Loan 465 note seeking a judgment thereon for approximately $4,100,000 principal, plus interest and attorney fees as provided therein. This note bears date of June 9, 1975, was evidence of other loans exclusive of the note for Loan 462, was secured by a deed conveying real property different from that conveyed as security for Loan 462, and was secured also by a guaranty.

Saul Trust did not seek confirmation of the Cobb County foreclosure sale (Code Ann. § 67-1503). The Vaughns contended in answer to the complaint on Loan 465 note that because the security deed for Loan 462 contains a dragnet clause,[1] under the terms of which Loan 465 promissory note could be said to have been a part of the secured indebtedness, Saul Trust having failed to secure confirmation was thereby estopped to maintain its action. They maintained it was a suit for a "deficiency judgment" within the purview of Code Ann. § 67-1503.

After extensive discovery (a record of approximately 3000 pages), motions for summary judgment were made by both Saul Trust and the Vaughn group. The trial court denied the Vaughns' motions, granted Saul's motion, and entered judgment for Saul Trust against the Vaughn group for $5,105,350.66 principal, interest, late charges and attorney fees, plus costs, specifically declining to accept the Vaughns' argument that the suit was for a "deficiency judgment" and barred by Code Ann. § 67-1503.

From this judgment granting plaintiffs' motion and denying defendants' motion for summary judgment, the Vaughn group appeals, assigning eighteen alleged errors.

1. Enumeration of error No. 1 raises these questions: Did the failure of Saul Trust to seek confirmation of the

---

[1] "In addition to the above described indebtedness, this instrument shall and does secure: (a) any and all renewals or extensions thereof, together with any and all other debts and obligations of Grantor to Grantee which are now owing or may hereafter become owing; . . ."

foreclosure sale of the property conveyed to secure the note made in 1974 for Loan 462 bar this action on the note made in 1975 for Loan 465? That is, where a deed to secure debt given to secure a specific note described therein, containing a dragnet or open-end clause making the property conveyed thereby security for all other debts and obligations either then or thereafter owed by the grantor to the grantee, is foreclosed by exercise of the power of sale in the security deed for which no confirmation of sale was sought, is the grantee barred from maintaining an action to recover on another note between the same parties, subsequently made for another loan and secured by a security deed on a different property?

Open-end or "dragnet" clauses in deeds to secure debt are valid in Georgia if the subsequent indebtedness conforms to the statutory requirements. Code Ann. § 67-1316; *C. & S. DeKalb Bank v. Hicks,* 232 Ga. 244, 246 (206 SE2d 22) (1974); *Bryant v. Branch,* 142 Ga. App. 189 (1977). And without question, the confirmation statute, Code Ann. § 67-1503 et seq., leaves a security deed creditor an option not to confirm a foreclosure sale thereby forgoing the right to sue for a deficiency. Unlike this case, however, all of the cases brought to our attention, with one exception, involve only one parcel of land conveyed as security for a specific note, to which under the "dragnet" clause there were tacked on other debts of the grantor. That one exception is *Salter v. Bank of Commerce,* 189 Ga. 328 (6 SE2d 290) (1939).

In *Salter* the bank by exercise of the power contained in its 1931 security deed bought at public sale the security property. No confirmation of sale was sought. The security deed contained a "dragnet" clause. The bank had another note made in 1936 secured by a deed to other property, and upon its effort to foreclose that security deed Salter presented his petition for injunction, contending among other things that the bank was barred from foreclosing because the previous foreclosure sale had not been confirmed. Denial of the injunction was upheld. The court stated that the confirmation statute does not "inhibit subsequent sale under power of property *other than the property* which at a former sale under power failed to 'bring the amount of the debt.' " *Salter v. Bank of*

*Commerce,* 189 Ga. 328, 332, supra.

In *Bryant v. Branch,* supra, Bryant purchased land for $1,100,000. He made a purchase money note for $1,000,000 with a security deed therefor, and gave another note for $50,000. This latter note was shown on the closing statement as "unsecured note from purchaser to sellers." The grantees in the security deed foreclosed under the power of sale, and subsequently brought an action on the note for $50,000. The security deed contained the provision that it was intended "to secure any and all other indebtedness now owing or which may hereafter be owing by the grantor." This court upheld the right of the payee in that note to bring an action on the note for $50,000. The note was not embraced within the foreclosure, and the note was not one for a deficiency arising out of the foreclosure sale.

In this case the Vaughns were given notice by certified mail of Saul Trust's intention to foreclose the 1974 security deed by exercise of the power of sale. The notice described only the note dated June 21, 1974 for $3,100,000 and referred to no other debt of the Vaughn group.

We hold that the present action is not to recover a *deficiency* judgment on the debt for which foreclosure was had, but to recover on a separate, subsequent and different note made a year later for a different debt and for which a conveyance of other property was made as security. The note sued upon is a separate transaction from that which was the basis for foreclosure, is not within the prohibition of Code Ann. § 67-1503, and Saul Trust was not barred from bringing action thereon.

2. The first enumeration also includes an assertion that the trial court erred in denying the Vaughn group's motion for summary judgment. There were not, however, a certificate of the trial judge and an application to this court for review. Our Supreme Court has held that denial of a motion for summary judgment is not reviewable other than by the procedures set forth in Code Ann. §§ 6-701 (a) (2) and 81A-156 (h). *Marietta Yamaha, Inc. v. Thomas,* 237 Ga. 840, 842 (2) (229 SE2d 753) (1976).

3. The Vaughns contend as errors 2 and 3 that the trial court erred in admitting into evidence portions of the

affidavit of Philip D. Caraci submitted in support of Saul Trust's motion for summary judgment. The objections were that the affidavit (a) was not the best evidence, Caraci not being qualified to testify to the facts therein, (b) refers to documents not in the record in sworn or certified form, and (c) relies on and refers to documents which do not qualify as business records.

Although Saul Trust's motion for summary judgment was filed on August 3, 1976, supported by the Caraci affidavit and served upon them, the Vaughn group submitted four briefs in opposition to the motion for summary judgment in which they did not object to the Caraci affidavit, and it was not until December 21 thereafter during oral argument on the motion that they challenged the affidavit. An affidavit in support of a motion must set forth such facts as would be admissible in evidence (Code Ann. § 81A-156 (e)), and to the extent that it contains material which would not be admissible in evidence it is subject to a motion to strike. But a motion to strike must be timely or the objection is waived. 10 Wright & Miller, Federal Practice and Procedure: Civil § 2738, pp. 706-7 (1973). Failure to have raised this objection at an earlier time was sufficient in itself to justify the overruling of the motion to strike.

Even if it may be said that the motion to strike was timely, the objections to the affidavit fail and the court properly overruled the motion. Code Ann. § 38-711 provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term 'business' shall include every kind of business, profession, occupation, calling, or

operation of institutions, whether carried on for profit or not. This section shall be liberally interpreted and applied."

In his affidavit Mr. Caraci stated that he is "familiar with the files maintained by the Saul Trust concerning the loan at issue and with the accounting books and records involving the administration of this loan"; that the records are "maintained in the regular course of business"; that the records were made "at or near the time of" the financial and accounting entries and computations involved. In his deposition he testified that he had supervisory responsibility over all files "concerning Loan 465." He identified himself as administrative vice-president with the primary responsibility for supervising the administration of all loans made by the Saul Trust.

All of the requirements of § 38-711 were satisfied. The witness need not have personal knowledge of the correctness of the record or have actually made the entries himself. *F. N. B. Financial Co. Factoring Div. v. Glaze Tire Co.,* 140 Ga. App. 184, 185 (230 SE2d 342) (1976); *Smith v. Bank of the South,* 141 Ga. App. 114 (232 SE2d 629) (1977).

The Vaughn group contend that the summary of disbursements attached to the Caraci affidavit was improper under the "best evidence" rule (Code Ann. § 38-203) and that sworn copies of the records upon which the summary was based were required to be submitted with the affidavit.

Summarized statements of what books of account and records show are admissible, provided the books and records themselves are accessible to the court and the parties. *Cotton v. John W. Eshelman & Sons,* 137 Ga. App. 360, 363 (2) (223 SE2d 757) (1976) and cits. The Vaughns had ample opportunity to examine and question the documentary basis of the Caraci summary of disbursements, for they were produced long before the hearing, and were readily accessible to the trial court.

On this appeal the Vaughn group assert for the first time that because Mr. Caraci was not an expert accountant, bookkeeper, or auditor, his summary should have been excluded. Yet at the hearing, Vaughn's counsel

stated that Mr. Caraci "is perfectly entitled to look at the records, he is perfectly entitled to make a summary of them, he is perfectly entitled, if he was in a trial, to use that summary . . ." It is axiomatic that an objection to evidence not offered in the trial court cannot be urged for the first time on appeal. *Employers &c. Ins. Co. v. Wrenn,* 132 Ga. App. 287, 288 (1) (208 SE2d 124) (1974).

These arguments must fail.

4. Enumerations of error 4, 5 and 7 charge error by the trial court in denying the Vaughns' request for further discovery and motion for another continuance.

Historically it has been the policy of Georgia appellate courts not to interfere with the trial judge's broad discretion granted to him under the discovery provisions of the Civil Practice Act. *Houston General Ins. Co. v. Stein Steel &c. Co.,* 134 Ga. App. 624, 626 (2) (215 SE2d 511) (1975). We find no abuse of discretion by the trial court. The suit on the note had been filed nearly nine months prior to the hearing on the motion for summary judgment. Two continuances of the summary judgment hearing had been granted to the Vaughn group. They had ample time and opportunity to conduct discovery, and from the size of this record it would appear that the right to conduct discovery was rather well exercised.

There is no merit in these three enumerations.

5. The Vaughns assert as error 6 an alleged failure of the trial court to open, read and consider prior to its grant of summary judgment the original transcripts of depositions by eight witnesses which had been filed.

It appears that on January 27, 1977 the trial court entered a nunc pro tunc order that eight named depositions "on file with this court be opened and copies made for record on appeal." Appellants charge in this appeal that the trial court's failure to have opened the depositions was reversible error, that at the hearing prior to entry of judgment the judge admitted that he had not yet seen one deposition, "and that there is nothing to indicate that he ever did so." They rely upon *Jackson v. Couch Funeral Home,* 131 Ga. App. 695 (206 SE2d 718) (1974) and *Brown v. Rooks,* 139 Ga. App. 770 (229 SE2d 548) (1976). In *Jackson* the clerk of the trial court excluded two depositions from the appeal record on the

ground that they were not unsealed and introduced in evidence on the motion. We reversed and remanded to the trial court to "enter a new order after taking into consideration 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.'" In *Brown,* supra, the trial court *refused* to consider appellant's affidavit in opposition to appellee's motion for summary judgment, and we remanded with direction that the trial judge enter a new judgment based on consideration of the affidavit. Certainly the trial judge should always search the entire record before granting a motion for summary judgment, and should not limit himself to the evidence introduced at the hearing. *Thompson v. Abbott,* 226 Ga. 353, 355 (174 SE2d 904) (1970).

In this case at the hearing prior to the trial court's grant of summary judgment, counsel for the Vaughn group stated that "before we close we are going to want to submit into evidence certain documents, I don't know that we need to do that for the purpose of the record now but I'll get them together. . . They are depositions, exhibits, affidavit exhibits and so marked." Appellants' counsel did submit into evidence the documents to which he referred, although it is not clear whether he submitted copies or the originals. However, there is no requirement that these items be introduced into evidence. *Thompson v. Abbott,* supra. At the conclusion of the arguments and pre-sentation of evidence, the trial judge stated: "Gentlemen, if there is nothing else I want to tell you all how much I appreciate the tremendous work that you have done on these briefs. I really do, and motions, and I'm grateful to you for that, it's very beautiful work and I appreciate it very much. I would like to conclude this and to rule from the Bench, but I don't propose to do so. I have not seen Mr. Saul's deposition, and I do expect to look at whatever other documents that I haven't seen, and I will rule on this matter within the next few days." That was on December 21, 1976.

One week thereafter the trial court rendered its judgment, and, unlike the *Jackson* case, the trial judge set forth in his order the following: "The Court has considered *each of* the briefs, the affidavits, *the depositions,* and other

documents submitted, as well as the very able and helpful oral argument of counsel. Upon analysis of all of the above, the Court has concluded . . . [and] finds that there is no genuine issue as to any material fact with respect to the enforcement of the Promissory Note. . ." (Emphasis supplied.) See Code Ann. § 81A-156 (c). Where the trial judge in his order recites, as here that he has considered "each of . . . the affidavits, the depositions, and other documents submitted . . .," this court will not say that he did not do so.

6. Error No. 8 charges that the court erred in granting Saul Trust's motion for summary judgment because there were genuine issues of material fact concerning discharge of certain conditions precedent to consummation of the promissory note and guaranty upon which this action was based.

Loan 465 consolidated six prior loans (exclusive of Loan 462) between the parties which had financed preliminary acquisition and development work. There were deeds to secure debt for these six prior loans. Under the terms of the consolidation loan agreement Saul Trust was obligated to release the security title from the several security deeds and cancel the notes described therein, but not until the lender had received "a mortgagee's title insurance policy . . . in such form and substance and in such amounts and with such companies, as shall be satisfactory to Lender." The Vaughns contend that the unreleased properties raise a genuine issue of material fact as to whether the consolidated loan was ever validly closed and whether they can be found liable under the terms of that loan and the note. Counsel for the Vaughn group admitted, however, by affidavit under oath that no title policy had in fact been issued "in such form and substance . . . as shall be satisfactory to Lender." The Vaughns admit that they executed and delivered the note which is the subject of the action. It is an unconditional obligation to repay the principal and interest when due. There was nothing to make it conditional. Code Ann. § 109A-3—105. We see no genuine issue of material fact, and this enumeration of error is without merit.

7. The Vaughns allege as errors 9, 10 and 11 that "the various loans between the parties were intermingled

by the allocations of monies from one loan to pay expenses properly chargeable to another." They contend that this alleged "intermingling raises genuine issues of material fact concerning the questions of default, mutual departure from the strict terms of the consolidation loan and note sued upon here by reason of prior course of conduct, and the amount due under the note."

We fail to find any evidence in the record of any cross allocations or intermingling of funds involving Loan 465 *after* the consolidation loan was closed. What may have taken place as to allocation of funds between the six loans *before* consolidation is not in issue. Whatever agreements and arrangements relative to those six loans were merged into the later executed contract. *Hennessy v. Woodruff,* 210 Ga. 742, 744(82 SE2d 859) (1954); *Samuels v. Cartledge,* 227 Ga. 211, 212 (179 SE2d 768) (1971).

The Vaughns charge that an issue of fact was raised as to whether Saul Trust intended to waive their right to insist on strict compliance with, and had materially departed from, the terms of the note sued upon. They rely upon Code Ann. § 20-116, which provides: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement."

"Though a quasi new agreement arises where the parties mutually depart from the terms of the original agreement and pay or receive money under such departure [cit.], there must be more than a simple breach on the part of one of the parties; there must be a mutual departure." *Crawford v. First Nat. Bank,* 137 Ga. App. 294, 296 (223 SE2d 488, 490) (1976). For Code Ann. § 20-116 to apply, "the circumstances [must] be such as will in law imply a mutual new agreement, whereby new and distinct terms are supplied in lieu of those provided in the original contract." *Jones v. Lawman,* 56 Ga. App. 764, 771 (194 SE 416) (1937). The allegations of the Vaughns are not legally sufficient to imply a "mutual new agreement," and no issue of the fact is made. They are at best vague

statements of a belief that the terms of the note might be modified if necessary. "Parol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid written instrument." Code Ann. § 38-501.

We have found no evidence of record that would indicate any intermingling of Loan 465 itself with other loans. The parties contractually agreed what amounts had been disbursed, and the amount due on the note upon which this action is based was determined by reference to the note itself and the documents evidencing that loan.

There is no merit in these enumerations.

8. Errors 12 and 13 charge that there were genuine issues of material fact as to whether the parties entered into an agreement of compromise and settlement, by which interest payments falling due between November 1, 1975 and the date of formal approval could have been paid by an interest reserve created by the proposed agreement. Such a proposed agreement does not appear to have ever been executed. The Vaughns contend that these "facts" estop Saul Trust from maintaining this action, and amount to a waiver of Saul Trust's right to maintain this action.

The brief for the Vaughns does not mention the doctrines of waiver or estoppel, and not a single citation of authority is given in support of the alleged errors. Accordingly, these enumerations are deemed to be abandoned. Court of Appeals Rule 18 (c) (2); Code Ann. § 24-3618; *Patterson v. Professional Resources,* 140 Ga. App. 315, 316 (3) (231 SE2d 88) (1976).

9. Enumeration of error 14 is that Saul Trust failed to discharge its duty to advance monies to which the Vaughns were entitled, and consequently the trial court erred in granting summary judgment.

We find no basis in law or fact to support this charge. The Vaughns assert that approximately $1.3 million had not been advanced under the terms of the loan, and cite Salinger v. Lincoln Nat. Life Ins., 52 F2d 1080 (8th Cir. 1931), and *Schnuck v. West Lumber Co.,* 205 Ga. 827 (55 SE2d 213) (1949). In both of those cases the monies had been improperly withheld or restricted.

In this case the fund of $1.3 million remaining to be disbursed was held pursuant to the terms of the

Consolidation and Development Loan Agreement between the parties "for payments of principal and interest which shall become due and payable during the term of this loan on notes secured by the purchase money security deeds" listed as a part of the agreement, all eight of which apparently were superior to Saul Trust's security deed and were held by the parties from whom the Vaughns had purchased the land securing the 465 promissory note.

Applicable here is this court's statement in *Jones v. Hamilton Mortgage Corp.*, 139 Ga. App. 239, 241-242 (1) (228 SE2d 170) (1976): "Here the appellee and appellants had entered into an agreement regarding what was tantamount to two separate accounts. We cannot hold as a matter of law that the appellee was required to utilize funds specifically allocated for use on the principal loan to pay on the loan of which the escrow funds were already depleted. See Moore v. Kime, 43 Neb. 517 (61 NW 736). Indeed, it is questionable whether the appellee would have had the right to transfer the funds from the amount set aside to be applied to the principal loan in order to meet the demands of the other fund. . . Hence the trial judge did not err in finding that the loan was in default and thus permitting a sale. See *Nat. Community Builders v. C. & S. Nat. Bank,* 232 Ga. 594, 595 (207 SE2d 510)."

There was no duty on Saul Trust to divest funds specifically allocated for payment of the purchase money debts to payment of Vaughns' interest obligations.

10. The four last enumerations (15, 16, 17 and 18) are that summary judgment should not have been granted because the promissory note and guaranty agreement were void, illegal and unenforceable because they constitute a contract in restraint of trade under Code Ann. § 20-504, and are in violation of the Sherman Anti-Trust Act, 15 USC § 1.

Contemporaneous to and as a part of the consideration for Loan 465 the Vaughns agreed to, and did, furnish to Saul Trust an opinion from Vaughns' counsel. Vaughns' counsel, who also is one of their counsel in this appeal, represented in a written opinion that the specific documents (those now sued upon) "and other

matters and documents as we consider necessary to give the opinions expressed herein" had been reviewed, and that based on this review, the documents were "valid obligations of borrower and its partners, enforceable in accordance with their respective terms. . ." If there were any deficiencies, they existed at the time of the opinion letter, and Vaughns' right to assert them was intentionally relinquished apparently in order to obtain the loan. Saul Trust accepted and relied upon the opinion, and the Vaughns are barred from contesting the validity of the documents. Code Ann. § 38-116.

The charges that the promissory note was void, illegal and unenforceable under Code Ann. § 20-504 are embodied in Enumerations 15 and 16. Here again, however, there are no arguments or citations of authority in support, and we consider these enumerations abandoned. Rule 18 (c) (2), supra.

As to errors 17 and 18, jurisdiction to determine matters involving federal antitrust laws is vested exclusively in the federal courts, and issues arising under those laws, whether raised by way of attack or defense, are beyond the jurisdiction of state courts. 15 USCA § 1; Miller v. Granados, 529 F2d 393, 395 (4) (CCA 5th 1976); Union Oil Co. v. Chandler, 4 Cal. App. 3d 716 (84 Cal. Rptr. 756, 764) (1970); AMF Pinspotters, Inc. v. Harkins Bowling, 260 Minn. 499 (110 NW2d 348, 354 (8)) (1961); Barns v. Dairymen's League Co-op Assn., 220 App. Div. 624 (222 NYS 294, 302 (2)) (1927). An obligor cannot refuse to comply with his contractual obligations by asserting in state court illegality based on an alleged violation of federal antitrust laws. See Azalea Drive-In Theatre v. Sargoy, 215 Va. 714 (214 SE2d 131, 135) (1975).

In the present case, the promissory note is evidence of a valid loan. The Vaughns had the use of more than $4 million principal and have yet to repay it. They will not be allowed to use the antitrust law to avoid paying their just debts. If there was a violation of the federal antitrust laws to their injury, there is an adequate remedy under the provisions of those Acts.

*Judgment affirmed. Deen, P. J., and Marshall, J., concur.*

ARGUED JUNE 6, 1977 — DECIDED JULY 13, 1977 — REHEARING DENIED JULY 28, 1977 — 

*Morris, O'Brien & Manning, Joseph R. Manning, Barry B. McGough, Redfern, Butler & Morgan, C. David Butler,* for appellants.

*Orr & Edwards, W. Fred Orr, II, Shaw, Pittman, Potts & Trowbridge, Leslie A. Nicholson, Jr., Marck Augenblick, John Engel,* for appellees.