## A09A1558. MORRISON et al. v. MORRISON et al.

(683 SE2d 696)

MIKELL, Judge.

In June 2004, W. Lee Morrison, Jr. ("Morrison"), suffered cardiac arrest following surgery and died shortly thereafter. Since then, two of Morrison's sons, Alexander Morrison ("Alex") and W. Lee Morrison III ("Lee"), have filed several lawsuits against a third son and the executor of their father's estate, Ralph Morrison ("Ralph"), contending that they were entitled to certain portions of their father's estate. This is the third appearance of cases involving Morrison's estate in our appellate courts. In *Morrison v. Morrison*,[1] Alex filed a caveat to Ralph's petition to probate Morrison's 1998 will, alleging undue influence and seeking revocation of the will. The caveat was rejected, the will was admitted to probate, and the Supreme Court of Georgia affirmed.[2] While that suit was pending, Alex and Lee ("appellants") brought suit against Ralph, individually and as executor of Morrison's estate, alleging breach of fiduciary trust, constructive trust, intentional interference with a gift, and

---

[5] *Stevens v. Green*, 204 Ga. App. 60, 61 (1) (418 SE2d 377) (1992); *Boggs v. Griffeth Bros. Tire Co.*, 125 Ga. App. 304, 309 (7) (187 SE2d 915) (1972).

[1] *Morrison v. Morrison*, 282 Ga. 866 (655 SE2d 571) (2008) (hereinafter "*Morrison I*").

[2] Id.

fraud.[3] The trial court granted summary judgment in favor of Ralph, finding that the nonfraud claims were barred by res judicata and collateral estoppel and that the fraud claims were barred by OCGA §§ 51-5-7 (2) and 51-5-8.[4] In *Morrison II*, the Supreme Court of Georgia reversed the trial court's ruling.[5] On remand, the trial court again granted summary judgment to Ralph. It is from that order that appellants bring the instant appeal. Because we agree with appellants that they had insufficient notice that the trial court would rule on the previously filed motion for summary judgment, we reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

A brief summary of facts was stated in *Morrison II* as follows:

> [Morrison] gave [Ralph] a power of attorney in 1986 [and 1995], and executed wills in 1988, 1995, and 1998. In 2003, [Morrison] made notes of potential changes on a copy of the 1998 will and, two weeks before he died in June 2004, mailed them to [his attorney, Gil McLemore]. While [Morrison] was incapacitated prior to his death, [Ralph] discovered a copy of those notes along with a handwritten message addressed to him, which stated, "If anything happens to me before I am able to write my new will, please see and abide by the changes I have inked in on this 1998 will. I know you will do as I ask of you. Please do as I ask/legal or not."[6]

The letter further instructed, "I have 7 or 8 money market accounts at Buckhead Community Bank. They are to be given to the persons [sic] name they are in, except Jim,[7] that [account] is to be divided equally between Alex, Ralph [and] Lee. . . ." Morrison's and Jim's joint account contained $60,000. Before his father's death, Ralph distributed the proceeds of this account as follows: $10,000 each to Alex and Lee, and $40,000 to himself. Morrison's 1998 will devised his Sea Island home to Ralph. Morrison's handwritten notes provide that the Sea Island home be divided equally between Ralph and Alex; that a rental home in Atlanta be devised to Lee "provided he can afford it"; and that his Atlanta residence be devised to Alex. After receiving Morrison's notes on June 13, 2004, McLemore prepared a

---

[3] See *Morrison v. Morrison*, 284 Ga. 112 (663 SE2d 714) (2008) (hereinafter "*Morrison II*").

[4] Id.

[5] Id. at 116 (3).

[6] (Punctuation omitted.) Id. at 112.

[7] Morrison's fourth son, Jim, is severally mentally retarded, with an IQ of a six- or seven-year-old child, and has been institutionalized since 1970.

draft will, incorporating his requested changes. Morrison died several days later without executing the new will, and the aforementioned litigation ensued.

1. In their first enumeration of error, appellants contend that the trial court erred by ruling upon legal issues contrary to their prior dispositions by the Supreme Court of Georgia in violation of the law of the case rule. They argue that Ralph raised numerous arguments in the Supreme Court other than those explicitly addressed in *Morrison II* and that the Supreme Court could have been persuaded by some or all of those arguments. If it had been so persuaded, it could have affirmed the trial court's judgment under the "right for any reason rule." According to appellants, since the Supreme Court was not so persuaded — and did not affirm the judgment as right for any reason — then the trial court was precluded from being so persuaded in all subsequent proceedings because, like its explicit rulings, the Supreme Court's implicit rulings are "the law of the case." We do not agree.

*Morrison II* held that under the facts in the record, it was error for the trial court to grant summary judgment by reason of res judicata and collateral estoppel, OCGA §§ 51-5-7 (2) and 51-5-8.[8] The Supreme Court also noted that there had been no completed inter vivos gift and that the claim for intentional interference with an expected gift was still viable. The Court then reversed the trial court's judgment.[9] The law of the case rule encompasses only these explicit holdings. The reversal restored the status quo ante and left pending in the trial court appellants' fraud and nonfraud claims. Whether the reversal left pending motions which had been made and ruled upon, we need not decide today.

2. In their second enumeration of error, appellants contend that the trial court erred in granting summary judgment without notice or a pending motion.[10] We agree.

"It is error to grant a motion for summary judgment without affording the opposite side the time provided or without giving notice or the opportunity to be heard."[11] Although the trial court issued a notice of oral argument for all "ripe motions" to be heard on January 15, 2009, there is no evidence in the record as to which motions the trial court considered "ripe" for argument or that Ralph renewed his

---

[8] Id. at 116 (3).

[9] Id. at 112-113 (1).

[10] Ralph filed a motion to dismiss, or in the alternative, motion for judgment on the pleadings, which was converted to a motion for summary judgment and granted by the trial court. Appellants appealed from this order in *Morrison II*, supra.

[11] (Citations and punctuation omitted.) *Dixon v. Midland Ins. Co.*, 168 Ga. App. 319, 320 (2) (309 SE2d 147) (1983).

motion for summary judgment after remand. Appellants were not given clear notice that the trial court considered the summary judgment motion still pending and "ripe" for a decision.[12] Accordingly, the case is remanded with instructions that, if either party moves again for summary judgment, the trial court shall give the opposing party at least thirty days during which to file additional evidence, then schedule a hearing, and then by order or judgment attempt to narrow the issues, if any, for jury determination, and to decide those issues which are matters of law for the court.

3. In their third enumeration of error, appellants contend that the trial court erred in granting summary judgment despite the existence of genuine issues of material fact as to each of their claims. In particular, appellants contend that issues remain as to whether Ralph breached his fiduciary duty to his father by failing to divide equally the joint account Morrison held with Jim and by refusing to transfer real property to Alex and Lee as instructed in Morrison's handwritten notes.

For better or worse, distinctions between real and personal property, and the differing requirements for effectuating gifts of one or the other, have persisted since at least the thirteenth century.[13] Appellants contend that it is a matter of fact for the jury to determine whether the instructions on the post-it notes stapled to the conformed copy of Morrison's 1998 will were confusing and/or inconsistent. We do not agree. A jury's role in interpreting a valid but ambiguous contract is well defined.[14] But the law of agency is not identical to the law of contracts. Whether the instructions, or some portion of them, are too ambiguous to be carried out by the agent is a matter of law for the court.[15] Regardless of the clarity of the instructions, whether the powers of attorney authorized the gift of

---

[12] See *Premium Distrib. Co. v. Nat. Distrib. Co.*, 157 Ga. App. 666, 667 (1) (278 SE2d 468) (1981) ("it is within the discretion of a trial judge to consider a renewed motion for summary judgment even without an expansion of the record").

[13] See generally 2 Frederick Pollock & Frederic William Maitland, The History of English Law Before the Time of Edward I, 180-183 (Cambridge Univ. Press, 2d Ed. 1978) (1895).

[14] The rules for contract construction provide as follows:
Initially, the construction of the contract is a question of law for the court. . . . [I]f no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. . . . [I]f, [however,] ambiguity does appear, the existence or non-existence of an ambiguity is itself a question of law for the court. . . . [A] jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.
(Citations and punctuation omitted.) *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993).

[15] See generally *Hargrove v. Armour Fertilizer Works*, 31 Ga. App. 465 (120 SE 800) (1923). Compare *Warnock v. Elliott*, 96 Ga. App. 778, 789-790 (101 SE2d 591) (1957) (questions of the existence, scope, and extent of an agent's authority are for the trier of fact).

real property and were adequate to effectuate it is a matter of law for the court. Notwithstanding, we agree with appellants that issues of fact exist in the present record regarding distribution of the money in the joint account. What issues of fact may or may not exist if the parties file additional evidence, we of course do not know.

*Judgment reversed and case remanded with instructions. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 19, 2009

*Caldwell & Watson, Robert S. Carlson, Harry W. MacDougald,* for appellants.

*Jones Day, Gregory R. Hanthorn, Paul, Hastings, Janofsky & Walker, Robert M. Martin,* for appellees.