**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 12, 2022**

# In the Court of Appeals of Georgia

A22A0912. LAS COLINAS APARTMENTS LLC et al. v. FANNIE MAE.

McFADDEN, Presiding Judge.

This case is a deficiency action, subsequent to the confirmation of a foreclosure. The case is now before us a second time.

In the earlier appeal we reversed a summary judgment granted to the debtors, Las Colinas Apartments LLC, the borrower, and Allen Gross, a guarantor. *Fannie Mae v. Las Colinas Apts.*, 346 Ga. App. 867 (815 SE2d 334) (2018). We held that the debtors had defaulted and that they are both personally liable for the deficiency. Id. at 869 (1). We went on to hold, "According to the undisputed evidence, in the form of an affidavit of Roy Miller, a senior asset manager for Fannie Mae, the deficiency amount was $9,863,458.55." Id. at 873 (2). We "remand[ed] this case for the trial

court to enter summary judgment in favor of Fannie Mae on liability" and for that court "to determine damages, including any interest and attorney fees." Id. at 873-874 (2). On remand, the trial court entered a final judgment in the amount of $10,224,348.24.

The debtors now argue that the trial court erred by entering summary judgment sua sponte. We do not agree with the debtors' characterization of those proceedings. The proceedings below on remand reflect an unexceptionable exercise of the trial court's discretion to execute our direction "to determine damages, including any interest and attorney fees." *Fannie Mae*, 346 Ga. App. at 874 (2).

The debtors also argue that the trial court should have stricken the Miller affidavit, which we had cited in our earlier opinion. They contend that it was based on hearsay and failed to attach the records it referenced. But they did not timely raise those arguments, so they are waived. Moreover they are without merit.

Finally they argue that the evidence regarding the amount of damages was disputed and thus did not support the judgment. That argument rests in part on their attacks on the Miller affidavit. The debtors also point to a loss-sharing agreement between Fannie Mae and the original lender; but under the terms of the debtors' security deed, the loss-sharing agreement does not reduce their indebtedness. Finally,

2

the debtors contend that a prepayment penalty is precluded by the terms of the loan documents; but this argument is foreclosed by our prior opinion.

So we affirm.

1. *Background.*

The record shows that the debtors borrowed $12.5 million from HSBC Realty Credit Corporation. HSBC assigned the loan to Fannie Mae. The debtors defaulted on the loan, and Fannie Mae foreclosed on the property securing it.

In 2015, Fannie Mae sued the debtors for a deficiency judgment after confirmation of the foreclosure sale. In 2017, Fannie Mae moved for summary judgment. It argued that it was entitled to damages of $9,863,458.55, the amount due on the loan, plus $230,778.77, the costs and attorney fees incurred to the date of the filing of the motion.

The debtors filed a cross-motion for summary judgment. They also filed a response to Fannie Mae's motion for summary judgment. In their response, the debtors argued that Fannie Mae was not entitled to summary judgment on liability; that Fannie Mae had misrepresented the amount of damages; and that Fannie Mae was not entitled to attorney fees.

The trial court conducted a hearing on the summary judgment motions. Fannie Mae argued the amount of damages to which it was entitled, pointed to its evidence of the damages incurred, addressed the debtors' argument for a reduction of damages, stated that it had incurred an additional $43,581.09 in fees, and presented its invoices. The debtors argued that particular documents showed that Fannie Mae's damages should be reduced for various reasons.

The trial court denied Fannie Mae's motion and granted the debtors' motion. Fannie Mae appealed.

In *Fannie Mae v. Las Colinas Apts.*, 346 Ga. App. at 867, "we reverse[d] the order of the trial court and remand[ed] the case for proceedings consistent with [that] opinion." Id. at 867-868. As detailed above, we directed the trial court to enter summary judgment in favor of Fannie Mae on liability and to determine damages. Id. at 873-874 (2). We held that Fannie Mae had "met its burden of proof of showing the amount of loss in a manner in which the trial judge could calculate the amount of the loss with a reasonable degree of certainty[,]" id. at 873 (2) (citation and punctuation omitted), and that "[a]ccording to the undisputed evidence . . . the deficiency amount was $9,863,458.55." Id.

4

On April 16, 2019, after the remittitur had been filed in the trial court, Fannie Mae filed a proposed final order and judgment. This document is not included in the appellate record, but the parties and the trial court refer to the proposed final order several times and the debtors filed a "Response Brief in Opposition to Plaintiff's Final Order and Judgment." The trial court entered a notice of hearing, stating that the court would conduct a hearing "concerning Plaintiff's Proposed Final Order and Judgment, and the Defendant[s'] Response Brief in Opposition to Plaintiff's Final Order and Judgment."

At that hearing, the trial court pondered whether, pursuant to our opinion directing the trial court "to determine damages," he could simply enter judgment for Fannie Mae or whether the debtors were entitled to a trial or hearing. Ultimately, the court did not decide the issue and instead ordered 60 days of additional discovery to "give [the debtors] some discovery if there's an issue or fact that [the court] had to look at."

Not much happened in the case for almost two years. Eventually, a new judge was assigned to the case, and in September 2021, he entered an order clarifying that discovery had ended. He also denied the debtors' motion to strike the affidavit of Roy Miller, which Fannie Mae had submitted in 2017 on the issue of damages in support

of its motion for summary judgment and which, in our prior opinion, we referred to as undisputed evidence of the deficiency amount. 346 Ga. App. at 873 (2). The court concluded that he was "in a position to 'determine damages' as was directed by the Court of Appeals." He noted that Fannie Mae had "argued that the [c]ourt should rule on the pleadings" while the debtors had "argued that more is required." The court stated that "while [he was] inclined to rule on the motion for summary judgment as to damages based upon the existing record, [he was] choosing to honor the promise to reconvene that [the previous judge] had made on July 23, 2019." So the court directed the parties to appear "for a hearing on the issue of whether or not [d]efendants have a right to a full damages hearing, jury trial, or bench trial." The court stated that "[s]ubsequent to the hearing, the [c]ourt will either issue a ruling on summary judgment as to damages, or schedule additional proceedings as urged by [d]efendants."

At that hearing, the debtors argued that they were entitled to a jury trial, a bench trial, or a hearing on the issue of damages. They argued that issues of fact remained regarding the calculation of damages. They relied on a loss-sharing agreement Fannie Mae had with HSBC, the original lender that had assigned the security deed to Fannie Mae. And they challenged a prepayment penalty in the

6

parties' contract. Their attorney stated that their arguments were set out in two briefs: their brief in opposition to Fannie Mae's proposed final judgment and their brief supporting their motion to strike the Miller affidavit.

Counsel for Fannie Mae responded that the debtors had not "confronted Fannie Mae's prima facie evidence in the record with evidence of their own." She relied on the facts that the loss-sharing agreement between Fannie Mae and HSBC was not in the record and that the security deed expressly stated that the debtors were not to receive the benefits of any loss-sharing agreement. Counsel for Fannie Mae listed the affidavits on which it relied to show that the evidence of its damages was undisputed.

The trial court concluded that he would issue an order on damages. He observed that our earlier opinion foreclosed some of the debtors' arguments and that Fannie Mae's damages were "just a matter of doing the math based upon the contract." Ten days later, the trial court entered the final order awarding Fannie Mae $10,224,348.24, consisting of a judgment of $9,863,458.55, the amount we had found in the earlier appeal to be undisputed, plus $360,889.69 in attorney fees pursuant to the terms of the loan documents. The debtors filed this appeal.

2. *The trial court's order*.

7

The debtors argue that the trial court erred by sua sponte granting summary judgment to Fannie Mae after remand. We disagree.

At the outset, we reject the debtors' characterization of the trial court's order as the sua sponte grant of summary judgment. Instead, we hold that the trial court's order was an unexceptionable exercise of his discretion to execute our direction "to determine damages, including any interest and attorney fees." *Fannie Mae*, 346 Ga. App. at 874 (2). See OCGA § 5-6-10 ("The decision of the appellate court and any direction awarded in the case shall be certified by the clerk to the court below, under the seal of the court. The decision and direction shall be respected and carried into full effect in good faith by the court below.").

"Absent any other directive by this [c]ourt, when this [c]ourt vacates and remands a case 'for proceedings' or 'for further proceedings' on an issue, [as we did here,] the trial court is obligated to hold a hearing or, at the very least, allow the parties to submit additional briefing to address the issue on remand." *Doxey v. Crissey*, 359 Ga. App. 695, 701 (859 SE2d 849) (2021). However, "it [is] within the trial court's discretion to determine what type of 'proceeding' is necessary to allow the parties and the trial court to address an issue on remand. While a new trial may

8

be warranted, an evidentiary hearing or further briefing by the parties may suffice under the circumstances of a case." Id. at 702.

In this case, after the remittitur, the debtors had the opportunity to submit further briefing on the issue of damages. They addressed the nature and amount of Fannie Mae's claimed damages in their post-remittitur response brief in opposition to Fannie Mae's proposed final order and judgment. The trial court conducted hearings, at one of which the debtors argued damages and noted that their arguments were set forth in their brief in opposition to Fannie Mae's proposed judgment and their brief in support of their motion to strike the Miller affidavit. And the parties and the trial court had addressed the issue of damages in the initial summary judgment proceedings.

Under these circumstances, we hold that the trial court did not abuse his discretion in entering the final order in response to our direction to determine damages. Cf. *Doxey*, 359 Ga. App. at 701-702 (reversing trial court's post-remittitur entry of judgment because trial court did not hold a hearing or allow the parties to submit additional briefing to address the issue on remand, which the parties had not previously addressed); *Morrison v. Morrison*, 299 Ga. App. 758, 760-761 (2) (683 SE2d 696) (2009) (on remand, trial court erred by entering summary judgment

without notice to the parties where Supreme Court in prior appeal had reversed a grant of summary judgment without direction).

3. *Roy Miller's affidavit.*

The debtors make several arguments about the affidavit of Roy Miller, a senior asset manager for Fannie Mae. Fannie Mae filed that affidavit in 2017 in support of its motion for summary judgment. In the affidavit, Miller calculated Fannie Mae's damages. We referred to the affidavit as undisputed evidence of the deficiency amount in our prior opinion. 346 Ga. App. at 873 (2). Nevertheless the debtors level several attacks on it. Assuming those arguments are not foreclosed by the law-of-the-case rule, see OCGA § 9-11-60 (h), we hold that they are without merit.

(a) *Motion to strike.*

The debtors argue that the trial court erred by denying their motion to strike the affidavit. The trial court held, and we agree, that the motion was untimely and amounted simply to an attack on the weight of Miller's testimony.

Fannie Mae filed the affidavit on January 13, 2017, in support of its motion for summary judgment. The debtors did not object to the affidavit in their brief in response (other than to characterize it as "cook[ed] up"). Indeed, as noted in our prior opinion, we stated that Miller's affidavit was undisputed. 346 Ga. App. at 873 (2).

10

After remand, once the trial court gave the parties time for additional discovery, the debtors deposed Miller on December 3, 2019. They filed their motion to strike Miller's affidavit on April 8, 2020. They argued that the trial court should strike the affidavit because Miller ignored the loss-sharing agreement with HSBC; included a prepayment penalty when determining damages; was based on documents prepared by HSBC (and thus was hearsay); and did not attach sworn or certified copies of the documents he relied on. The trial court denied the motion to strike on the grounds that it was not timely made and it amounted simply to an attack on the weight the court should give Miller's testimony.

"[A] motion to strike must be timely or the objection is waived." *Vaughn & Co. v. Saul*, 143 Ga. App. 74, 78 (3) (237 SE2d 622) (1977) (citation omitted). Because the debtors failed to raise their objection to the Miller affidavit at the time the trial court considered the cross-motions for summary judgment, the trial court did not abuse his discretion in denying the motion to strike. See *Vaughn & Co.*, 143 Ga. App. at 78 (3) (defendants' failure to raise objections to plaintiff's affidavits prior to oral argument on motion for summary judgment "was sufficient in itself to justify the overruling of the motion to strike"). The debtors argue that they could not object to

11

the affidavit until after they had taken Miller's deposition. But the bases of their objections were apparent at the time of the summary judgment proceedings.

(b) *Hearsay*.

The debtors argue that the trial court erred by relying on the Miller affidavit to calculate Fannie Mae's damages since the affidavit is based on hearsay. The debtors do not point to where they made a hearsay objection, although our review of the record shows that they did raise the issue in their motion to strike. See Court of Appeals Rule 25 (a) (1) (an appellant's brief shall state the method by which an enumeration of error was preserved for consideration).

"[I]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible." OCGA § 24-8-802. To properly object to hearsay, "counsel must take exception to the alleged error *at the earliest possible opportunity* in the progress of the case by a proper objection made a part of the record." *Birch Property Partners v. Simpson*, 364 Ga. App. 315, 325-326 (4) (874 SE2d 814) (2022) (citation and punctuation omitted; emphasis in original). "A non-contemporaneous motion to strike is not a procedural tool to object to evidence. . . ." *Torres v. City of Jonesboro*, 354 Ga. App. 874, 877 (2) (842 SE2d 75) (2020) (citation and punctuation omitted). The debtors did not

make their hearsay objection at the earliest possible opportunity. Even if they did not learn of the alleged hearsay until they took Miller's deposition, they did not raise their hearsay objection until four months later in the motion to strike.

The plain error rule does not cure the waiver. The debtors "do[ ] not argue, and ha[ve] not carried [their] burden of demonstrating, plain error on this ground on appeal." *Thrift v. State*, 310 Ga. 499, 507 (5) n.7 (852 SE2d 560) (2020). See OCGA § 24-1-103 (d) ("Nothing in [our Evidence Code] shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."); *Birch Properties*, 364 Ga. App at 326 (4) ("[P]lain error review applies to evidentiary errors in civil cases. . . ."). "To establish plain error, [the debtors] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected [their] substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Denson v. State*, 307 Ga. 545, 547-548 (2) (837 SE2d 261) (2019) (citation and punctuation omitted).

Moreover the only item of hearsay the debtors argue about in their appellate brief is Miller's testimony regarding a "payoff quote." They argue that in his deposition, Miller admitted that HSBC was the entity that prepared the payoff quote.

13

They argue that Miller's testimony based on HSBC's records was hearsay. But Fannie Mae introduced another affidavit in support of that calculation, that of a vice president for HSBC, who testified about the loan's payment history, the unpaid principal balance, and the interest due; and her figures matched the figures in Miller's affidavit. Since other competent evidence of record supported the trial court's calculation of damages, even if there was a clear error that had not been affirmatively waived, such error would not have affected the debtors' substantial rights. See *Patrick Malloy Communities v. Community & Southern Bank*, 334 Ga. App. 76, 81 (1) (778 SE2d 242) (2015). The debtors have not shown error, plain or otherwise.

(c) *Attached records.*

The debtors argue that Miller's affidavit should be disregarded because Fannie Mae did not provide sworn or certified copies of the documents attached to the affidavit. See OCGA § 9-11-56 (e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."). But in his sworn affidavit, Miller testified that the documents were "true and correct" copies. And, as Fannie Mae points out, the debtors themselves authenticated the documents attached to the Miller affidavit. "An affidavit need not attach material upon which it is based if that material is part of the record in the case and is before

14

the trial court, provided that the affidavit clearly identifies the record matter upon which it is based[,]" as did Miller's affidavit. *Jones v. Rodzewicz*, 165 Ga. App. 635, 637 (4) (302 SE2d 402) (1983). In any event, the debtors did not raise this objection until they filed their untimely motion to strike, which the trial court denied.

4. *Damages award*.

The debtors argue that the evidence does not support the damages award.

(a) *Evidence supported the calculation of damages*.

The debtors argue that the only evidence supporting the damages award was the Miller affidavit, which should have been stricken. We disagree for the reasons detailed above.

(b) *Loss-sharing agreement*.

The debtors argue that Fannie Mae's damages calculation is incorrect because it ignores the loss-sharing agreement between Fannie Mae and HSBC. That agreement is not in the record on appeal. See *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014) ("It is [the debtors'] burden, as the part[ies] challenging the ruling below, to affirmatively show error from the record on appeal."). In any event, under the terms of the debtors' security deed, the loss-sharing agreement does not reduce the debtors' indebtedness.

15

The security deed expressly provides that

> (1) any arrangement (a "Servicing Arrangement") between [Fannie Mae] and [HSBC] for loss sharing or interim advancement of funds shall constitute a contractual obligation of [HSBC] that is independent of the obligation of [the debtors] for the payment of the Indebtedness, (2) [the debtors] shall not be a third party beneficiary of any Servicing Arrangement, and (3) *no payment by [HSBC] under any Servicing Arrangement will reduce the amount of the Indebtedness.*

(Emphasis supplied.) Under the plain terms of this provision of the security deed, the debtors are not entitled to a credit that would reduce the amount of their indebtedness for any amounts HSBC paid Fannie Mae pursuant to the loss-sharing agreement. For the same reason, the debtors' argument that Fannie Mae is contractually not required to reimburse HSBC, so Fannie Mae's damages must be off-set by an amount HSBC paid Fannie Mae, lacks merit.

(c) *Prepayment penalty*.

The debtors argue that under the terms of the loan documents, Fannie Mae's damages should not have included a prepayment penalty. This argument is foreclosed by our prior opinion.

In that opinion, we observed that the note allowed Fannie Mae to accelerate the loan if an event of default occurred. *Fannie Mae*, 346 Ga. App. at 872 (2). We

16

observed that if Fannie Mae exercised its right of acceleration, the note provided that the debtors would "pay to Fannie Mae, in addition to the entire unpaid principal balance of this [n]ote outstanding at the time of the acceleration, (i) all accrued interest and all other sums due Fannie Mae under this [n]ote and the other [l]oan [d]ocuments, and (ii) the prepayment premium calculated pursuant to Schedule A." Id. at 872-873 (2) (punctuation omitted). We held that the debtors "admitted that Las Colinas failed to make all payments due pursuant to the [n]ote. This failure 'to pay when due any amount required by the [n]ote' was an '[e]vent of [d]efault,' which triggered the [a]cceleration clause of the [n]ote." Id. at 873 (2) (punctuation omitted). The record shows that Fannie Mae exercised its right of acceleration. So the debtors were required to pay the entire unpaid principal balance, the accrued interest, and the prepayment premium. See id. at 872-873 (2).

*Judgment affirmed. Gobeil and Land, JJ., concur.*

17