**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., AND SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 4, 2026**

# In the Court of Appeals of Georgia

A26A0395. JOHNSON v. WEXLER.

FULLER, Senior Judge.

In this action for defamation and related claims, plaintiff Larry Johnson appeals from the trial court's order awarding attorney fees under Georgia's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, OCGA § 9-11-11.1. For the reasons explained more fully below, we affirm.

This Court previously affirmed the trial court's order striking Johnson's claims against Shimshon Wexler, Jeffrey Cordtz, and Richard Alembik pursuant to the anti-SLAPP statute. *Johnson v. Cordtz*, 366 Ga. App. 87, 92 (878 SE2d 603) (2022). The anti-SLAPP statute allows a defendant to move to strike a frivolous lawsuit filed to punish the exercise of free speech. Id. at 87. By way of background, Johnson is an

attorney, and he represented a creditor in a debt-collection matter. Id. In April 2021, Johnson sent a letter to both Cordtz, a debtor of one of Johnson's clients, and Alembik, Cordtz's attorney, demanding payment of the debt and warning of liability for Johnson's fees. Id. Alembik consulted with Wexler, an attorney familiar with the federal Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692 et seq., and thereafter sent a letter to Johnson alleging several FDCPA violations in the letter to Cordtz and Alembik. Id. at 87-88.

Although Johnson ultimately withdrew his letter, Wexler filed a federal suit against him on behalf of Cordtz, again raising the alleged FDCPA violations. *Johnson*, 366 Ga. App. at 88. After the federal suit was filed, Johnson threatened to sue Alembik and Wexler unless they agreed to a settlement, including dismissal of the federal litigation.[1] Id. When his demands were not met, Johnson, proceeding pro se, filed the instant suit against Wexler, Alembik, and Cordtz, seeking $4,000,000 in damages and alleging state law claims of defamation, intentional infliction of emotional distress, conspiracy, and tortious interference with business relations. Id. Wexler, who initially

---

[1] Ultimately, a federal magistrate judge issued a final recommendation to grant, in part, Johnson's motion for summary judgment, *Cordtz v. Johnson Legal Offices, LLC*, No. 1:21-cv-02003-MHC-LTW, 2022 WL 17908679 (ND Ga., Sept. 30, 2022), which was thereafter adopted by the district court.

represented himself, filed a motion to dismiss or strike Johnson's complaint pursuant to the anti-SLAPP statute. Id. Following a hearing, the trial court granted Wexler's motion and struck all of Johnson's claims against the three defendants. Id. at 89. Wexler thereafter filed a motion for attorney fees under the anti-SLAPP statute.[2] Wexler attached his own affidavit, as well as statements setting forth the work he personally did for his defense, and an affidavit and statements from attorney Orion Webb, who also assisted with the litigation. However, before the trial court ruled on the initial request for fees, Johnson appealed the order striking his complaint.

As set forth above, this Court affirmed the trial court's order, holding that it properly determined that Johnson's claims were barred by the anti-SLAPP statute. *Johnson*, 366 Ga. App. at 92(1). This Court also denied Johnson's motion for reconsideration, id. at 93, and the Supreme Court of Georgia denied his subsequent petition for a writ of certiorari. See Case No. S23C0372 (June 21, 2023).

Back in the trial court, Wexler filed an amended motion for fees, seeking to recover not only the fees for his and Webb's work in the trial court, but also the fees

---

[2] Although the other defendants initially joined in the request for attorney fees, they later withdrew their requests after they settled with Johnson.

incurred by his appellate counsel.[3] Following extensive briefing and a hearing at which Wexler, Webb, and appellate counsel testified, the trial court granted the request for fees under OCGA § 9-11-11.1(b.1). Specifically, the court ordered Johnson to pay Wexler and Webb $71,610 for the fees that they incurred in the trial court and to pay $87,817 to appellate counsel. This appeal follows.

"As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract. When awarded by statute, such fees may be obtained only pursuant to the statute under which the action was brought and decided." *Suarez v. Halbert*, 246 Ga. App. 822, 824(1) (543 SE2d 733) (2000) (citation omitted). Accord *Azizan v. Hajianbarzi*, 372 Ga. App. 396, 399(2) (903 SE2d 677) (2024). The anti-SLAPP statute's fee provision, OCGA § 9-11-11.1(b.1), provides that "a prevailing moving party on a motion to strike shall be granted the recovery of attorney's fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case." Importantly, an award of fees is mandatory where the

---

[3] Johnson also filed a motion to set aside the trial court judgment as to Wexler, who was by then the only remaining defendant, which the trial court denied. This Court subsequently denied Johnson's request for discretionary review of the order denying the motion to set aside.

4

moving party prevails on its motion to strike. OCGA § 9-11-11.1(b.1). Accord *PNC Fin. Servs. Group v. Gibson*, 371 Ga. App. 660, 666(2)(b)(ii) (901 SE2d 331) (2024). And OCGA § 9-11-11.1(b.1) allows parties to recoup fees incurred during both trial court litigation and appellate proceedings. *Rosser v. Clyatt*, 364 Ga. App. 101, 103–05(2) (874 SE2d 140) (2022).

1. Turning to Johnson's claims of error,[4] he first contends that the trial court erred in granting Wexler's request for attorney fees because "any state law claims were preempted under the FDCPA" for two independent reasons. This argument is not compelling.

"The Supremacy Clause of the United States Constitution mandates that federal law will preempt a state law that is inconsistent with it." *Reis v. OOIDA Risk Retention Group, Inc.*, 303 Ga. 659, 660 (814 SE2d 338) (2018). Accord US Const. Art. VI, cl. 2. See *CSX Transp., Inc. v. Easterwood*, 507 US 658, 663(I) (113 SCt 1732, 123 LE2d 387) (1993) ("Where a state statute conflicts with, or frustrates, federal law, the former must give way."). We review de novo whether federal law preempts state law

---

[4] Johnson continues to represent himself on appeal.

claims. *Smith v. Hi-Tech Pharm., Inc.*, 364 Ga. App. 476, 479(1) (875 SE2d 454) (2022).

(a) First, Johnson asserts that a prior ruling on preemption by the trial court, which, he maintains, was affirmed by this Court, is the law of the case and therefore bars any state law claims for attorney fees. He is incorrect.

A ruling by this Court on any issue is binding in all subsequent proceedings in the same case. OCGA § 9-11-60(h) ("The law of the case rule is abolished; . . . provided, however, that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."). Accord *Hicks v. McGee*, 289 Ga. 573, 577–78(2) (713 SE2d 841) (2011). But prior rulings by trial courts are not the law of the case. See OCGA § 9-11-60(h); *Knapp v. Cross*, 279 Ga. App. 632, 635(1) (632 SE2d 157) (2006) (explaining that the trial court was not bound by its prior ruling because the law-of-the-case rule has been abolished).

In its previous order granting Wexler's motion to strike Johnson's claims under the anti-SLAPP statute, the trial court found, inter alia, that Johnson's claims against the defendants for enforcing the FDCPA conflicted with — and therefore were

preempted by — the FDCPA, as a result of which the letter sent by Alembik to Johnson notifying him that he was violating the FDCPA could not state a basis for state tort claims. Johnson asserts that this ruling is the law of the case because it was affirmed on appeal. However, our decision in *Johnson v. Cordtz*, 366 Ga. App. 87, did not explicitly consider whether, or hold that, Johnson's claims against the defendants were preempted by the FDCPA. Rather, we held that the trial court did not err in striking Johnson's claims because Alembik's letter was a protected act and Johnson could not prevail on his claims for reasons having nothing to do with preemption. Id. at 90–92(1) (observing, in relevant part, that the trial court found, and Johnson conceded, "that he could not prevail on his claims because they comprised an action for abusive litigation and Johnson had not satisfied the procedural requirements of the abusive litigation statute"). And pretermitting — for the moment — whether the preemption of Johnson's stricken claims would have any bearing on Wexler's ability to recover attorney fees under the anti-SLAPP statute, the law-of-the-case rule encompasses only our explicit holdings. *Hicks*, 289 Ga. at 579(2) (explaining that a court errs by expanding the law-of-the-case rule to encompass implied rulings); *Morrison v. Morrison*, 299 Ga. App. 758, 760(1) (683 SE2d 696) (2009) (noting that the

7

law-of-the-case rule "encompasses only . . . explicit holdings"); *Parks v. State Farm Gen. Ins. Co.*, 238 Ga. App. 814, 815(1) (520 SE2d 494) (1999) (holding that the law-of-the-case rule "applies only to actual *decisions*, not to issues . . . never ruled upon"). As this Court did not rule that Johnson's claims were preempted by the FDCPA, his law-of-the-case argument fails.

(b) Johnson alternatively contends that Wexler's claims for attorney fees are preempted by the FDCPA regardless of whether the law-of-the-case rule applies.[5] We disagree.

"Congress — through federal laws and regulations — may effectively preempt state law in three ways: (1) express preemption; (2) field preemption (regulating the field so extensively that Congress clearly intends the subject area to be controlled only

---

[5] Although the Supreme Court of Georgia "has exclusive jurisdiction over appeals involving construction of the Constitution of the State of Georgia and of the United States and all cases in which the constitutionality of a law, ordinance, or constitutional provision has been called into question," and thus has exclusive appellate jurisdiction when a party asserts an affirmative claim of preemption, this Court has generally "exercised jurisdiction in those cases where a defendant argues that the plaintiff's otherwise cognizable state law claim is preempted under the circumstances of the particular case." *Fox v. Norfolk S. Corp.*, 342 Ga. App. 38, 43–44(1) (802 SE2d 319) (2017) (quotation marks omitted). Because this case involves a preemption defense, rather than an affirmative claim of preemption, this Court has jurisdiction to decide the issue. See id. at 45–46(1).

by federal law); and (3) implied (or conflict) preemption." *Smith*, 364 Ga. App. at 478–79(1) (quotation marks omitted).

Here, the federal law at issue, the FDCPA, provides protections for debtors from debt collectors. See 15 USC § 1692(e). In contrast, Georgia's anti-SLAPP statute is aimed at protecting people's rights of petition and freedom of speech by allowing courts to strike claims arising in "meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation." *Geer v. Phoebe Putney Health System, Inc.*, 310 Ga. 279, 282(2) (849 SE2d 660) (2020).

The FDCPA expressly preempts state laws "with respect to debt collection practices" that are inconsistent with it "only to the extent of the inconsistency." 15 USC § 1692n. Here, Wexler's request for OCGA § 9-11-11.1(b.1) attorney fees is largely, if not entirely, unrelated to the FDCPA, except as background information for understanding how this litigation came to be. The same is true of Johnson's state law claims against the defendants (for defamation, intentional infliction of emotional distress, conspiracy, and tortious interference with business relations), as this is not

an action by a debtor seeking protection from debt collection practices. And although there is an FDCPA attorney-fees provision, 15 USC § 1692k(a)(3), which authorizes fee awards against debt collectors who engage in abusive debt collection practices, see 15 USC § 1692, it has no applicability in this case, which states no claims for abusive debt collection practices. For the same reason, Johnson's reliance on a Florida federal district court's ruling in *Matos v. Bus. Law Group, P.A.*, No. 6:18-cv-1105-GAP-DCI, 2024 WL 6957594 (MD Fla. Oct. 25, 2024), is misplaced. *Matos* held that a state law attorney-fees provision was preempted by the FDCPA's attorney-fees provision "in debt collection cases like this one." See id. at *5(II)(C). This is not a debt collection case.

For these reasons, Johnson has failed to persuasively point to any conflict between the FDCPA and Wexler's request for attorney fees, and we decline to find any preemption under these circumstances.

2. Johnson also contends that the trial court erred in awarding any fees to Wexler for his own work because he "had no prior experience" litigating under the

anti-SLAPP statute and there was no evidence that his services were needed to assist his outside counsel.[6] This argument is not persuasive.

"This Court generally applies an abuse-of-discretion standard in cases involving a claim of error in the decision to award or deny attorney fees." *Rosser*, 364 Ga. App. at 101 (quotation marks omitted).

Ordinarily, attorneys who represent themselves in litigation are entitled to obtain attorney fees. See, e.g., *Harkleroad v. Stringer*, 231 Ga. App. 464, 466–67(1) (499 SE2d 379) (1998) ("Why should the prosecutor of a frivolous litigation claim be let off the hook simply because the victim of the litigation represented himself?" (citation modified)). And Johnson points to no compelling reason why this general rule should not apply to attorney fees awarded under OCGA § 9-11-11.1(b.1). Moreover, although Johnson asserts that the fees to Wexler were not warranted because his services were unnecessary, this claim is not supported by the record. Wexler presented evidence at the hearing that he was actively involved with the

---

[6] Johnson raises no specific challenge to the award of fees incurred by either Webb or appellate counsel, save for conclusory allegations — with no citation to authority — that the amounts of their fees are "patently unreasonable." He has therefore abandoned any claims as to the amounts of those fees. See generally Ga. Ct. App. Rule 25(d)(1).

litigation, that there was no duplication of effort between himself and Webb during the trial court proceedings, that he did all of the legal research, and that without his assistance, Webb's fees would have been higher. Accordingly, we find that the trial court did not abuse its discretion in awarding Wexler fees for the work he did in defending himself. See *Rosser*, 364 Ga. App. at 101; *Harkleroad*, 231 Ga. App. at 468(1) (explaining that if an attorney expends "the same or less professional time, coupled with the same knowledge and experience, as other attorneys employed by them would have been compelled to do, it should make no difference" to the appellee whether the fees are paid to appellant or an attorney employed by appellant).

We do not authorize the reporting of this opinion because it does not announce a new rule or policy or involve an interpretation of law that is not already precedent. See Ga. Ct. App. R. 33.2(b), 34.

*Judgment affirmed. Doyle, P. J., and Davis, J., concur.*